No. 23-2275

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

STEVEN ROBERT BROWN, et al.,

Plaintiffs-Appellees,

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, et al.,

Defendants-Appellants.

———————————

On Appeal from the United States District Court
for the Northern District of West Virginia

———————————

**JOINT APPENDIX**

———————————

ADAM JEREMY KRAUT
  *Second Amendment Foundation*
  *12500 N.E. 10th Place*
  *Bellevue, WA 98005*
  *(800)-426-4302*

WILLIAM V. BERGSTROM
PETER A. PATTERSON
DAVID HENRY THOMPSON
  *Cooper & Kirk, PLLC*
  *1523 New Hampshire Avenue NW*
  *Washington, DC 20036*
  *(202)-220-9600*

*Counsel for Plaintiffs-Appellees*

MARK B. STERN
MICHAEL S. RAAB
ABBY C. WRIGHT
STEVEN H. HAZEL
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7217*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-2498*

*Counsel for Defendants-Appellants*

**TABLE OF CONTENTS**

Docket Sheet ...........................................................................................JA1

Amended Complaint ..............................................................................JA7

Memorandum Opinion and Order...................................................JA2**9**

Clerk's Judgment ................................................................................JA69

Order Entering Stay Pending Appeal and Clarifying Scope of Injunction ...............JA70

Notice of Appeal ................................................................................JA83

CERTIFICATE OF SERVICE

APPEAL,MAG

# U.S. District Court
# Northern District of West Virginia (Clarksburg)
## CIVIL DOCKET FOR CASE #: 1:22–cv–00080–TSK

| | |
|---|---|
| Brown v. Bureau of Alcohol, Tobacco, Firearms and Explosives et al | Date Filed: 08/30/2022 |
| Assigned to: Chief District Judge Thomas S Kleeh | Date Terminated: 12/07/2023 |
| Case in other court:  Fourth Circuit, 23–02275 | Jury Demand: None |
| Cause: 42:1983 Civil Rights Act | Nature of Suit: 440 Civil Rights: Other |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Steven Robert Brown**                    represented by   **Adam Kraut**
                                                            Kraut and Kraut Law Offices
                                                            P.O. Box 101
                                                            Westtown, PA 19395
                                                            (610) 696–8200
                                                            Email: adam@krautlaw.com
                                                            *LEAD ATTORNEY*
                                                            *PRO HAC VICE*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **John H. Bryan**
                                                            John H. Bryan, Attorneys at Law
                                                            611 Main Street
                                                            P O Box 366
                                                            Union, WV 24983
                                                            (304) 772–4999
                                                            Fax: (304) 772–4998
                                                            Email: jhb@johnbryanlaw.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Benjamin Weekley**                       represented by   **Adam Kraut**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *PRO HAC VICE*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **John H. Bryan**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Second Amendment Foundation**            represented by   **Adam Kraut**
*TERMINATED: 12/01/2023*                                    (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *PRO HAC VICE*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **John H. Bryan**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**

**West Virginia Citizens Defense League,**  represented by   **Adam Kraut**
**Inc.**                                                    (See above for address)
                                                            *LEAD ATTORNEY*

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John H. Bryan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Bureau of Alcohol, Tobacco, Firearms and Explosives**

represented by **Maximillian F. Nogay**
U.S. Attorney's Office – Whg
PO Box 591
Wheeling, WV 26003
(304) 234–0100
Fax: (304) 234–0112
Email: Max.Nogay@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Patrick Clendenen**
United States Department of Justice
1100 L Street NW
Room 12028
Washington, DC 20005
(202) 305–0693
Fax: (202) 616–8460
Email: michael.p.clendenen@usdoj.gov
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Patrick Morrisey**
*West Virginia Attorney General, in*
*official capacity*
*TERMINATED: 09/28/2022*

**Defendant**

**Merrick Brian Garland**
*U.S. Attorney General, in official*
*capacity*

represented by **Maximillian F. Nogay**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Patrick Clendenen**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Steven Michael Dettelbach**
*Director of the ATF, in official capacity*

represented by **Maximillian F. Nogay**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Patrick Clendenen**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/30/2022 | 1 | COMPLAINT against Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Michael Dettelbach, Merrick Brian Garland, Patrick Morrisey filed by Steven Robert Brown. (hand delivered to Clerk in Clarksburg) (Attachments: # 1 Civil Cover Sheet)(jss) (Entered: 08/30/2022) |
| 08/30/2022 | 2 | Filing fee: $ 402.00, receipt number WVNC003504 (jss) (Entered: 08/30/2022) |
| 08/30/2022 | 4 | NOTICE of General Guidelines for Appearing Pro Se in Federal Court. (Attachments: # 1 Certified Mail Return Receipt)(jss) (Entered: 08/30/2022) |
| 08/31/2022 | 5 | **VACATED PER DE 14 ORDER ENTERED ON 10/17/22. ORDER OF REFERRAL: REFERRING CASE to Magistrate Judge Michael J. Aloi. Signed by Chief District Judge Thomas S Kleeh on 8/31/22. (Attachments: # 1 Certified Mail Return Receipt)(jss)** Modified on 10/17/2022 (jss). (Entered: 08/31/2022) |
| 09/06/2022 | 6 | RETURN RECEIPT as to 4 Notice (Other). SERVICE ACCEPTED on 9/1/22 per USPS website. (jss) (Entered: 09/06/2022) |
| 09/08/2022 | 7 | RETURN RECEIPT as to 5 Order Referring Case to Magistrate Judge. SERVICE ACCEPTED on 9/2/22 Per USPS website. (jss) (Entered: 09/08/2022) |
| 09/23/2022 | 8 | NOTICE of Appearance by John H. Bryan on behalf of Steven Robert Brown (Bryan, John) (Entered: 09/23/2022) |
| 09/23/2022 | 9 | MOTION for Leave to Appear Pro Hac Vice by Steven Robert Brown. (Bryan, John) (Entered: 09/23/2022) |
| 09/27/2022 | 10 | Pro Hac Vice Filing fee for Adam Kraut: $ 200.00, receipt number WVNE018150 (jss) (Entered: 09/27/2022) |
| 09/27/2022 | 11 | AMENDED COMPLAINT *For Declaratory Judgment And Injunctive Relief* against All Defendants, filed by Steven Robert Brown.(Bryan, John) (Entered: 09/27/2022) |
| 09/28/2022 | 13 | **ORDER granting 9 Motion for Leave to Appear pro hac vice as to Adam Kraut. Signed by Chief District Judge Thomas S Kleeh on 9/28/22. (jss)** (Entered: 09/28/2022) |
| 10/17/2022 | 14 | **ORDER VACATING REFERRAL ORDER. The Court VACATES its prior order of referral, and DIRECTS the Clerk to terminate the Honorable Michael J. Aloi, United States Magistrate Judge, from referred status. Signed by Chief District Judge Thomas S Kleeh on 10/17/22. (jss)** (Entered: 10/17/2022) |
| 10/17/2022 | | Magistrate Judge Michael John Aloi no longer assigned to case. (jss) (Entered: 10/17/2022) |
| 10/17/2022 | 15 | **ORDER –– FIRST ORDER AND NOTICE REGARDING DISCOVERY AND SCHEDULING:**<br><br>**\*\*\*_NOTICE TO ATTORNEYS_\*\*\* : Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, ALL Non–governmental CORPORATE parties must file a DISCLOSURE STATEMENT with the Court. Forms are available on the Court's Web Site at http://www.wvnd.uscourts.gov/forms.htm**<br><br>Rule 26 Meeting to be held by 11/17/2022. Rule 26 Meeting Report due by 12/1/2022. Discovery due by 12/19/2022. Signed by Chief District Judge Thomas S Kleeh on 10/17/22. (jss) (Entered: 10/17/2022) |
| 10/20/2022 | 16 | SUMMONS Returned Executed as to Merrick Brian Garland served on 10/13/2022. (Bryan, John) (Entered: 10/20/2022) |
| 10/24/2022 | 17 | Corporate Disclosure Statement by Second Amendment Foundation. (Bryan, John) (Entered: 10/24/2022) |
| 10/24/2022 | 18 | Corporate Disclosure Statement by West Virginia Citizens Defense League, Inc.. (Bryan, John) (Entered: 10/24/2022) |

| 11/17/2022 | 19 | STIPULATION re 15 FirstOrder,, by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Michael Dettelbach, Merrick Brian Garland. (Nogay, Maximillian) (Entered: 11/17/2022) |
|---|---|---|
| 11/23/2022 | 20 | **ORDER ADOPTING STIPULATION: Rule 26 Meeting to be held by 1/9/2023. Rule 26 Meeting Report due by 1/23/2023. Discovery due by 2/13/2023. Signed by Chief District Judge Thomas S Kleeh on 11/23/22. (jss)** (Entered: 11/23/2022) |
| 12/11/2022 | 21 | MOTION for Leave to Appear Pro Hac Vice by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Michael Dettelbach, Merrick Brian Garland. (Nogay, Maximillian) (Entered: 12/11/2022) |
| 12/12/2022 | 22 | **ORDER: It is ORDERED that Michael Patrick Clendenen's 21 Application/Motion for Leave to Appear Pro Hac Vice is hereby APPROVED. Attorney Michael Patrick Clendenen for Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Michael Dettelbach and Merrick Brian Garland added. Signed by Chief District Judge Thomas S Kleeh on 12/12/2022. (cnd)** (Entered: 12/12/2022) |
| 12/12/2022 | 23 | MOTION to Dismiss by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Michael Dettelbach, Merrick Brian Garland. (Nogay, Maximillian) (Entered: 12/12/2022) |
| 12/12/2022 | 24 | MEMORANDUM *IN SUPPORT* by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Michael Dettelbach, Merrick Brian Garland re 23 MOTION to Dismiss . (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Nogay, Maximillian) (Entered: 12/12/2022) |
| 12/19/2022 | 25 | MOTION for Extension of Time to File Response/Reply as to 24 MEMORANDUM, *In Support Of Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint* by Steven Robert Brown, Second Amendment Foundation, Benjamin Weekley, West Virginia Citizens Defense League, Inc.. (Bryan, John) (Entered: 12/19/2022) |
| 12/19/2022 | 26 | Proposed Order by Steven Robert Brown, Second Amendment Foundation, Benjamin Weekley, West Virginia Citizens Defense League, Inc.. (Bryan, John) (Entered: 12/19/2022) |
| 12/20/2022 | 27 | **ORDER : Plaintiffs Motion for Extension of Time to File Response to Defendants Motion to Dismiss, it is hereby GRANTED. Plaintiffs response to Defendants motion shall be filed on or before January 3, 2023. Signed by Chief District Judge Thomas S Kleeh on 12/20/22. (jss)** (Entered: 12/20/2022) |
| 01/03/2023 | 28 | MOTION for Summary Judgment by Steven Robert Brown, Second Amendment Foundation, Benjamin Weekley, West Virginia Citizens Defense League, Inc.. (Attachments: # 1 Statement of Undisputed Material Facts in Support of Plaintiff's Motion for Summary Judgment, # 2 Declaration of Benjamin Weekley, # 3 Declaration of Steven Brown, # 4 Declaration of Ian T. Masters, # 5 Proposed Order)(Bryan, John) (Entered: 01/03/2023) |
| 01/03/2023 | 29 | Memorandum in Opposition re 23 MOTION to Dismiss *and in Support of Plaintiffs' Motion for Summary Judgment* filed by Steven Robert Brown, Second Amendment Foundation, Benjamin Weekley, West Virginia Citizens Defense League, Inc.. (Bryan, John) (Entered: 01/03/2023) |
| 01/04/2023 | 30 | MOTION for Extension of Time to File Response/Reply as to 29 Memorandum in Opposition to Motion, by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Michael Dettelbach, Merrick Brian Garland. (Attachments: # 1 Proposed Order)(Nogay, Maximillian) (Entered: 01/04/2023) |
| 01/05/2023 | 31 | **ORDER granting 30 Motion for Extension of Time. Responses due by 1/24/2023. Signed by Chief District Judge Thomas S Kleeh on 1/5/23. (jss)** (Entered: 01/05/2023) |
| 01/05/2023 | 32 | REPORT of Rule 26(f) Planning Meeting. (Nogay, Maximillian) (Entered: 01/05/2023) |
| 01/24/2023 | 33 | RESPONSE in Opposition re 28 MOTION for Summary Judgment *and Reply in Support of Defendants' Motion to Dismiss* filed by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Michael Dettelbach, Merrick Brian Garland. |

| | | (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G)(Nogay, Maximillian) (Entered: 01/24/2023) |
|---|---|---|
| 01/24/2023 | 34 | RESPONSE in Opposition re 28 MOTION for Summary Judgment *and Plaintiff's Statement of Undisputed Facts* filed by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Michael Dettelbach, Merrick Brian Garland. (Nogay, Maximillian) (Entered: 01/24/2023) |
| 01/24/2023 | 35 | *Exhibit H* Other Document re 33 Response in Opposition to Motion, filed by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Michael Dettelbach, Merrick Brian Garland. (Nogay, Maximillian) (Entered: 01/24/2023) |
| 02/07/2023 | 36 | REPLY to Response to Motion re 28 MOTION for Summary Judgment filed by Steven Robert Brown, Second Amendment Foundation, Benjamin Weekley, West Virginia Citizens Defense League, Inc.. (Bryan, John) (Entered: 02/07/2023) |
| 03/09/2023 | 37 | NOTICE by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Michael Dettelbach, Merrick Brian Garland *NOTICE OF SUPPLEMENTAL AUTHORITY* (Attachments: # 1 NRA v. Bondi (11th Cir. March 9, 2023))(Nogay, Maximillian) (Entered: 03/09/2023) |
| 04/11/2023 | 38 | *Rule 28J* Other Document *Letter To Clerk* filed by Steven Robert Brown, Second Amendment Foundation, Benjamin Weekley, West Virginia Citizens Defense League, Inc.. (Bryan, John) (Entered: 04/11/2023) |
| 05/16/2023 | 39 | *Rule 28(J)* Other Document *Letter to Clerk* filed by Steven Robert Brown, Second Amendment Foundation, Benjamin Weekley, West Virginia Citizens Defense League, Inc.. (Bryan, John) (Entered: 05/16/2023) |
| 12/01/2023 | 40 | **MEMORANDUM OPINION AND ORDER. The Court DENIES Defendant's Motion to Dismiss 23 and GRANTS Plaintiffs' Motion for Summary Judgment 28 . The Court DIRECTS entry of a final judgment in favor of Plaintiffs, and to STRIKE this case from the Court's active docket. Signed by Chief District Judge Thomas S Kleeh on 12/01/2023. (snc)** (Entered: 12/01/2023) |
| 12/01/2023 | 41 | **CLERK'S JUDGMENT in favor of West Virginia Citizens Defense League, Inc., Benjamin Weekley, Steven Robert Brown against Bureau of Alcohol, Tobacco, Firearms and Explosives, Merrick Brian Garland, Steven Michael Dettelbach. Signed by Clerk of Court on 12/01/2023. (snc)** (Entered: 12/01/2023) |
| 12/04/2023 | 42 | MOTION to Stay re 40 Order on Motion to Dismiss,, Order on Motion for Summary Judgment,, Memorandum & Opinion,, Add and Terminate Parties, *MOTION FOR A STAY OF INJUNCTION PENDING APPEAL AND MOTION TO CLARIFY* by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Michael Dettelbach, Merrick Brian Garland. (Attachments: # 1 Proposed Order)(Nogay, Maximillian) (Entered: 12/04/2023) |
| 12/05/2023 | 43 | RESPONSE in Opposition re 42 MOTION to Stay re 40 Order on Motion to Dismiss,, Order on Motion for Summary Judgment,, Memorandum & Opinion,, Add and Terminate Parties, *MOTION FOR A STAY OF INJUNCTION PENDING APPEAL AND MOTION TO CLARIFY* filed by Steven Robert Brown, Second Amendment Foundation, Benjamin Weekley, West Virginia Citizens Defense League, Inc.. (Attachments: # 1 Proposed Order)(Bryan, John) (Entered: 12/05/2023) |
| 12/06/2023 | 44 | REPLY to Response to Motion re 42 MOTION to Stay re 40 Order on Motion to Dismiss,, Order on Motion for Summary Judgment,, Memorandum & Opinion,, Add and Terminate Parties, *MOTION FOR A STAY OF INJUNCTION PENDING APPEAL AND MOTION TO CLARIFY* filed by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Michael Dettelbach, Merrick Brian Garland. (Nogay, Maximillian) (Entered: 12/06/2023) |
| 12/07/2023 | 45 | **ORDER ENTERING STAY PENDING APPEAL AND CLARIFYING SCOPE OF INJUNCTION [ECF NO. 42 ]. Defendants' Motion for a Stay of Injunction Pending Appeal and Motion to Clarify is GRANTED, and the injunction is STAYED pending appeal. Defendants' request for an immediate administrative stay is DENIED AS MOOT. Signed by Chief District Judge Thomas S Kleeh on 12/07/2023. (snc)** (Entered: 12/07/2023) |

| 12/08/2023 | 46 | NOTICE OF APPEAL as to 41 Clerk's Judgment, 40 Order on Motion to Dismiss,, Order on Motion for Summary Judgment,, Memorandum & Opinion,, Add and Terminate Parties, by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Michael Dettelbach, Merrick Brian Garland. (Nogay, Maximillian) (Entered: 12/08/2023) |
|---|---|---|
| 12/08/2023 | 47 | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re 46 Notice of Appeal. (snc) (Entered: 12/08/2023) |
| 12/08/2023 | 48 | MOTION to Stay *Request For Attorney Fees and Costs* by Steven Robert Brown, Second Amendment Foundation, Benjamin Weekley, West Virginia Citizens Defense League, Inc.. (Bryan, John) (Entered: 12/08/2023) |
| 12/08/2023 | 49 | Proposed Order by Second Amendment Foundation, Benjamin Weekley, Steven Robert Brown, West Virginia Citizens Defense League, Inc.. (Bryan, John) (Entered: 12/08/2023) |
| 12/11/2023 | 50 | USCA NOTICE OF APPELLATE CASE OPENING re 46 Notice of Appeal, filed by Steven Michael Dettelbach, Merrick Brian Garland, Bureau of Alcohol, Tobacco, Firearms and Explosives. Fourth Circuit USCA Case Number: 23–2275. Case Manager: Emily Borneisen, (804) 916–2704. (dk) (Entered: 12/11/2023) |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| **STEVEN BROWN,** : | |
| **BENJAMIN WEEKLEY,** : | |
| **SECOND AMENDMENT FOUNDATION, and** : | |
| **WEST VIRGINIA CITIZENS DEFENSE** : | |
| **LEAGUE,** : | Civil Action |
| : | No. 1:22-cv-00080 |
| Plaintiffs, : | |
| : | |
| **v.** : | |
| : | |
| **THE BUREAU OF ALCOHOL, TOBACCO,** : | |
| **FIREARMS AND EXPLOSIVES,** : | |
| **STEVEN DETTELBACH**, in his official capacity : | |
| as Director of the Bureau of Alcohol, Tobacco, : | |
| Firearms and Explosives; and : | |
| **MERRICK GARLAND**, in his official capacity as : | |
| Attorney General of the United States, : | |
| : | |
| Defendants. : | |
| : | |

## FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

**COME NOW** the Plaintiffs Steven Brown, Benjamin Weekly, Second Amendment Foundation, and West Virginia Citizens Defense League, by and through counsel, and complain of Defendants as follows:

### INTRODUCTION

1.    The Second Amendment protects "the right of the people to keep and bear Arms." And the Constitution ensures that "the right of law-

1

abiding, responsible citizens to use arms in defense of hearth and home" is "elevate[d] above all [governmental] interests" in restricting the right. *District of Columbia v. Heller,* 554 U.S 570, 635 (2008).

2.     Plaintiffs include law-abiding, responsible adult citizens who wish to purchase handguns—"the quintessential self-defense weapon," and "the most popular weapon chosen by Americans for self-defense," *Heller*, 554 U.S. at 629—and handgun ammunition from Federal Firearms Licensees ("FFLs") and lawful ammunition sellers for lawful purposes, including "defense of hearth and home."

3.     But Defendants' laws, including 18 U.S.C. § 922(b)(l)[1] and (c)(1); 27 C.F.R. §§ 478.99(b)(l), 478.124(a), and 478.96(b); the related regulations, policies, practices, customs designed to implement the same, and Defendants' continuing enforcement of them (collectively, the "Handgun Ban"), prevent law-abiding, responsible adult citizens under age twenty-one—including Plaintiffs Brown, Weekley, and the similarly situated members of the Second Amendment Foundation, and West Virginia Citizens Defense League—from doing so, in

---

[1] "It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver—(1) any firearm or ammunition to any individual who the licensee knows or has reasonable cause to believe is less than eighteen years of age, and, if the firearm, or ammunition is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age." 18 U.S.C. § 922(b)(1).

2

violation of the Second Amendment to the United States Constitution.[2]

4.      "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 142 S.Ct. at 2126. Moreover, "*the government must demonstrate* that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id*. (Internal citations omitted. Emphasis added.).

5.      "[T]he lack of a distinctly similar historical regulation…is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen,* 142 S. Ct. 2111, 2131 (2022). Indeed, the relevant historical evidence will show that no such similar regulation existed.

6.      The Government's Handgun Ban, and Defendants' actual and threatened enforcement of the same, should and must—under the text of the Constitution itself, as well as our Nation's history and tradition, and the Supreme Court's precedents—be declared unconstitutional and enjoined.

## **PARTIES**

---

[2] Plaintiffs Brown and Weekley are collectively referred to as "Individual Plaintiffs," and Plaintiffs Second Amendment Foundation and West Virginia Citizens Defense League are collectively referred to as "Institutional Plaintiffs."

3

7.    Plaintiff Steven Brown ("Brown") is a natural person over the age of
eighteen and under the age of twenty-one. He is a citizen of
Morgantown, West Virginia and the United States, and is a member of
Plaintiffs SAF and WVCDL.

8.    Plaintiff Benjamin Weekley ("Weekley") is a natural person over the
age of eighteen and under the age of twenty-one. He is a citizen of
Parkersburg, West Virginia and the United States, and is a member of
Plaintiffs SAF and WVCDL.

9.    Plaintiff Second Amendment Foundation ("SAF") is a nonprofit
educational foundation incorporated under the laws of Washington
with its principal place of business in Bellevue, Washington. SAF seeks
to preserve the effectiveness of the Second Amendment through
education, research, publishing, and legal action programs focused on
the constitutional right to keep and bear arms and the consequences of
gun control. SAF has members and supporters both over and under the
age of twenty-one. SAF has members and supporters throughout the
United States, some of whom reside in Morgantown and Parkersburg,
West Virginia, and other portions of West Virginia. SAF brings this
action on behalf its individual members who would purchase handguns
and handgun ammunition from lawful retailers, who would sell
handguns and handgun ammunition to adults under the age of twenty-

4

JA010

one, but are prohibited from doing so by the Handgun Ban enforced by Defendants, including through criminal penalties and loss of liberty and property, and the revocation of FFL and business licenses.

10.     Plaintiff West Virginia Citizens Defense League ("WVCDL") is nonpartisan, nonprofit membership organization formed in 2008 with a purpose of preserving, expanding, and perpetuating the right to keep and bear arms in the State of West Virginia. WVCDL has members in all fifty-five counties of the State of West Virginia including members between the ages of eighteen to twenty years old. WVCDL brings this action on behalf of its members who would purchase handguns and handgun ammunition from lawful retailers, and its member FFL handgun retailers who would sell handguns and handgun ammunition to adults under the age of twenty-one, but are prohibited from doing so by the Handgun Ban enforced by Defendants, including through criminal penalties and loss of liberty and property, and the revocation of FFL and business licenses.

11.     The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") is an agency of the United States under its Department of Justice ("DOJ"). ATF is responsible for the investigation and prevention of federal offenses involving the illegal use, manufacture, and possession of firearms, including violations and alleged violations of the Handgun Ban. ATF is also responsible for, *inter alia*, regulating and licensing

5

the sale, possession, transfer, and transportation of firearms and ammunition in interstate commerce. It is authorized to implement regulations for purposes of enforcing the Handgun Ban.[3]

12.  Defendant Steven Dettelbach is the Director of ATF ("Director"). As Director of ATF, Defendant Dettelbach is responsible for the creation, implementation, execution, and administration of the laws, regulations, customs, practices, and policies of the United States, particularly those related to firearms. He is presently enforcing, and has been enforcing at all times relevant to the Complaint, the laws, regulations, customs, practices, and policies underlying the Handgun Ban. He is sued in his official capacity.

13.  Defendant Merrick Garland is the Attorney General of the United States ("Attorney General") and is responsible for executing and administering the laws, regulations, customs, practices, and policies of the United States. Defendant Garland is the head of the DOJ. In that capacity, he is presently enforcing, and has been enforcing at all times relevant to the Complaint, the laws, regulations, customs, practices, and policies underlying the Handgun Ban. As Attorney General, Defendant Garland is ultimately responsible for supervising the functions and actions of the DOJ, including the ATF, which is an arm of the DOJ. He is sued in his official capacity.

---

[3] *See* 18 U.S.C. § 926.

## JURISDICTION AND VENUE

14.    This action seeks relief pursuant to 28 U.S.C §§ 2201, 2202, and 2412. Jurisdiction is founded on 28 U.S.C. § 1331, in that this action arises under the Constitution and laws of the United States.

15.    The Defendants, including ATF, are amenable to suit for relief other than money damages pursuant to 5 U.S.C. § 702.

16.    The Court has authority to award costs and attorney fees under 28 U.S.C. § 2412.

17.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (e).

## STATEMENT OF FACTS

**18.**    Plaintiff Brown has never been charged with nor convicted of any misdemeanor or felony offense, and is otherwise eligible to purchase and possess firearms, including handguns, under all applicable laws. Plaintiff Brown does not own a handgun but intends and desires to purchase a handgun and handgun ammunition for lawful purposes, including self-defense.

19.    Specifically, Plaintiff Brown desires to purchase a Bersa Thunder 380 handgun and accompanying ammunition for self-defense and other lawful purposes, including proficiency training and target shooting, in the exercise of his fundamental right to keep and bear arms under the Second Amendment. But as a result of Defendants' active enforcement

7

JA013

of the Handgun Ban, Plaintiff Brown is prevented from doing so.

20.     On or about June 16, 2022, Plaintiff Brown visited Rural King, an FFL in Parkersburg, West Virginia, and sought to purchase a Bersa Thunder 380 and a shotgun. After viewing the firearms he wished to purchase, including the Bersa Thunder 380, the clerk asked Plaintiff Brown for his driver's license. Upon reviewing his driver's license, the clerk informed Plaintiff Brown that he would be unable to sell him the handgun as he was under the age of twenty-one and prohibited by law from doing so but would be able to sell him the shotgun. Plaintiff Brown proceeded to complete the required paperwork, pass the background check, and purchase the shotgun.

21.     On or about July 15, 2022, Plaintiff Brown sought to purchase 50 rounds of 9mm Luger from Burns Bait and Carryout, an FFL located in Elizabeth, West Virginia and was denied on the basis of his age because he was under twenty-one.

22.     Plaintiff Brown is acquainted with the proper and safe handling, use, and storage of handguns and handgun ammunition, and he is otherwise entirely eligible to acquire and possess handguns for such purposes under all applicable state and federal laws.

23.     The Handgun Ban prevents Plaintiff Brown from purchasing a handgun of his choice, the Bersa Thunder 380, from a lawful retailer in violation of his constitutionally enumerated rights.

8

24.    But for the Handgun Ban, Plaintiff Brown would purchase a Bersa
Thunder 380 and handgun ammunition from a lawful retailer to
exercise his right to keep and bear arms for self-defense and other
lawful purposes.

25.    Plaintiff Weekley has never been charged with nor convicted of any
misdemeanor or felony offense, and is otherwise eligible to purchase
and possess firearms, including handguns, under all applicable laws.
Plaintiff Weekley does not own a handgun but intends and desires to
purchase a handgun and handgun ammunition for lawful purposes,
including self-defense.

26.    On or about June 12, 2022, Plaintiff Weekley visited Rural King, an
FFL in Parkersburg, West Virginia, and sought to purchase a
handgun. After viewing the firearm he wished to purchase the clerk
asked Plaintiff Weekley if he was a West Virginia resident. After
confirmation of his residency, the clerk inquired as to Plaintiff
Weekley's age. Upon learning that Plaintiff Weekley was under the age
of twenty-one, the clerk informed Plaintiff Weekley that he would be
unable to sell him the handgun as doing so was prohibited by law. The
clerk further informed Plaintiff Weekley that he could purchase a long
gun.

27.    Plaintiff Weekley desires to purchase a Glock 42 and accompanying
handgun ammunition for self-defense and other lawful purposes,

9

including proficiency training and target shooting, in the exercise of his fundamental right to keep and bear arms under the Second Amendment. But as a result of Defendants' active enforcement of the Handgun Ban, Plaintiff Weekley is prevented from doing so.

28.   The Handgun Ban prevents Plaintiff Weekley from purchasing handgun of his choice, the Glock 42, from lawful retailers, in violation of his constitutionally enumerated rights.

29.   Plaintiff Weekley is acquainted with the proper and safe handling, use, and storage of handguns and handgun ammunition, and he is otherwise entirely eligible acquire and possess handguns for such purposes under all applicable state and federal laws.

30.   But for the Handgun Ban, Plaintiff Weekley would purchase a Glock 42 and accompanying handgun ammunition from a lawful retailer to exercise his right to keep and bear arms for self-defense and other lawful purposes.

31.   Eighteen is the age of majority in 47 states, including West Virginia.

32.   All law-abiding U.S. citizens who are legal adults, including eighteen to twenty year-olds, have the right to: (i) vote; (ii) fully exercise the freedoms of speech, assembly, and petitioning of the government under the First Amendment to the United States Constitution; (iii) the full panoply of liberty protections in the Fourth, Fifth, and Sixth Amendments; (iv) enter into contracts; and (v) serve in the United

10

States Military as well as the militias and guards of the several states. They are also held responsible as adults for crimes they commit, and even being held fully accountable before the law for criminal matters to the point of being punished by execution.

33.  Indeed, all male citizens over eighteen years of age are designated members of the militia pursuant to 10 U.S.C. § 246(a) and may be selected and inducted for training and service into the United States armed forces under 50 U.S.C. § 3803(a). *See Heller*, 554 U.S. at 624 ("The traditional militia was formed from a pool of men bringing arms 'in common use at the time' for lawful purposes like self-defense.") (quoting *United States v. Miller*, 307 U.S. 174, 170 (1939)).

## THE HANDGUN BAN

34.  18 U.S.C. § 922(b)(1) declares: "It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver . . . any firearm or ammunition to any individual who the licensee knows or has reasonable cause to believe is less than eighteen years of age, and, if the firearm, or ammunition is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age." All violators "shall be fined under this title, imprisoned not more than five years, or both." 18 U.S.C. §924(a)(1)(D).

11

JA017

35.    As reflected in Defendant ATF's Minimum Age for Gun Sales and

Transfers publication:[4]

> Handguns: Under federal law, FFLs may not sell, deliver,
> or otherwise transfer any firearm or ammunition to any
> individual who the licensee knows or has reasonable
> cause to believe is under the age of 21.

36.    As further reflected on Defendant ATF's Q&A portion of its website:[5]

> **May an individual between the ages of 18 and 21
> years of age acquire a handgun from an unlicensed
> individual who is also a resident of that same State?**
>
> An individual between 18 and 21 years of age may acquire
> a handgun from an unlicensed individual who resides in
> the same State, provided the person acquiring the
> handgun is not otherwise prohibited from receiving or
> possessing firearms under Federal law. A Federal firearms
> licensee may not, however, sell or deliver a firearm other
> than a shotgun or rifle to a person the licensee knows or
> has reasonable cause to believe is under 21 years of age.
>
> There may be State or local laws or regulations that
> govern this type of transaction. Contact the office of your
> State Attorney General for information on any such
> requirements.

37.    18 U.S.C. § 922(c) provides that "a licensed importer, licensed

manufacturer, or licensed dealer may sell a firearm to a person who

does not appear in person at the licensee's business premises . . . only

if" the person signs a sworn statement attesting "that, in the case of

any firearm other than a shotgun or a rifle, I am twenty-one years or

---

[4] Available online at: https://www.atf.gov/resource-center/docs/guns-min-agepdf/download.

[5] Available online at https://www.atf.gov/questions-and-answers/qa/may-individual-between-ages-18-and-21-years-age-acquire-handgun-unlicensed.

12

more of age."

38. 27 C.F.R. § 478.99(b)(l) similarly declares: "A licensed importer, licensed manufacturer, licensed dealer, or licensed collector shall not sell or deliver (1) any firearm or ammunition . . . if the firearm, or ammunition, is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the importer, manufacturer, dealer, or collector knows or has reasonable cause to believe is less than 21 years of age."

39. Under 18 U.S.C. § 922(a)(5), it is illegal "for any person [other than a licensed dealer] to transfer, sell, trade, give, transport, or deliver any firearm to any person . . . who the transferor knows or has reasonable cause to believe does not reside in . . . the State in which the transferor resides."

40. Thus, the Handgun Ban categorically prohibits any adult over the age of eighteen but under the age of twenty-one from purchasing a handgun and handgun ammunition from licensed retailers.

## THE HANDGUN BAN IS UNCONSTITUTIONAL

41. The Second Amendment guarantees the individual right "to keep and bear arms." *See also Heller*, 554 U.S. at 595 and *Bruen*, 142 S.Ct. at 2122.

42. This is especially true when it comes to handguns, which the Supreme Court has explicitly recognized as "the quintessential self-defense

13

weapon." *Heller*, 554 U.S. at 629.

43.  The fundamental right to keep and bear arms protected by the Second Amendment secures the right to purchase handguns and handgun ammunition for self-defense and other lawful purposes. These protections extend in full to all law-abiding, peaceable adults aged eighteen and older.

44.  The Handgun Ban impermissibly infringes upon the right to keep and bear arms of all law-abiding, peaceable individuals aged eighteen to twenty.

45.  *Heller* demonstrated—through its analysis of the Second Amendment's text, supported and informed by our Nation's history and tradition— that historically ungrounded restrictions on the possession of handguns for self-defense must be held categorically unconstitutional, rather than subject to interest balancing.

46.  The analysis must be "guided by the principle that '[t]he Constitution was written to be understood by the voters; its words and phrases were used in their normal and ordinary as distinguished from technical meaning.'" *Heller*, 554 U.S. at 576 (quoting *United States v. Sprague*, 282 U.S. 716, 731 (1931)). We look to "the historical background of the Second Amendment" because "it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right." *Id.* at 592.

14

JA020

47.    *Bruen* confirms that the lower courts approach of analyzing Second Amendment challenges which combined history with means-end scrutiny was "one step too many." *Bruen*, 142 S.Ct. at 2127.

48.    American history and tradition confirm that all law-abiding adults, including those under the age of twenty-one, were understood to have full Second Amendment rights in the founding era.

49.    Indeed, over 250 colonial and founding-era militia statutes throughout the seventeenth and eighteenth centuries mandated that persons aged eighteen to twenty acquire and keep arms in order to serve in the militia and otherwise protect their communities. *See generally* David Kopel & Joseph Greenlee, *The Second Amendment Rights of Young Adults*, 43 S. Ill. U. L.J. 495 (2019) (providing over 200 militia statutes).

50.    Many statutes unrelated to militia service also required adults under the age of twenty-one to keep and carry arms. *Id.*

51.    In contrast, no colonial or founding era law restricted the right of individuals between the age of 18 and 21 to acquire or possess arms.

52.    Only months after the Second Amendment was ratified, Congress took steps to "provide for organizing, arming, and disciplining, the Militia" (U.S. Const. art. I, § 8, cl. 16), by enacting the Militia Act of 1792, requiring that every male citizen of each respective state, "who is or shall be of the age of eighteen years, and under the age of forty-five

15

years … shall severally and respectively be enrolled in the militia[.]"

53.   In 1790, Secretary of War Henry Knox submitted a militia plan to Congress stating that "all men of the legal military age should be armed," and that "[t]he period of life in which military service shall be required of [citizens] [was] to commence at eighteen." 1 Annals of Cong., app. 2141, 2145-2146.[6]

54.   Representative Jackson agreed "that from *eighteen to twenty-one* was found to be the best age to make soldiers of." Annals of Cong., app. 2141, 2145-2146. (emphasis added). Eighteen was the age that George Washington recommended for militia enrollment. 26 The Writings of George Washington 389 (John C. Fitzpatrick ed., 1938).

55.   The colonial and founding-era laws and customs provide irrefutable evidence that eighteen to twenty year-olds had the same Second Amendment rights as older individuals at the time the Second Amendment was ratified.

56.   *Heller* may not have "clarif[ied] the entire field" of Second Amendment analysis, 554 U.S. at 634, but it surely foreclosed any argument that the Second Amendment does not protect individuals who, at the time of ratification, were not only authorized but *required* by both state and federal law to keep and bear arms, *see id.* at 625 (concluding with "our adoption of the original understanding of the Second Amendment").

---

[6] The Annals of Congress may be viewed online at https://memory.loc.gov/cgi-bin/ampage.

16

57.     And *Bruen* squarely closes the door on any argument to the contrary. *See Bruen*, 142 S.Ct. at 2127, ("[T]he government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.").

58.     While the right protected by the Second Amendment is by no means, and could not be, limited to militia service, "the threat that the new Federal Government would destroy the citizens' militia by taking away their arms was the reason that the right … was codified in the written Constitution." *Heller*, 554 U.S. at 559.

59.     Thus, there is and never has been any constitutionally grounded basis for restricting the rights of law-abiding citizens over eighteen yet under twenty-one years of age who are eligible to serve in the military and to die for their country.

60.     It is clear that the text of the Constitution itself, as informed by our Nation's history and tradition and the Supreme Court's precedents, protects the right of adults eighteen years of age, but under age twenty-one—like Individual Plaintiffs Brown and Weekley, and Institutional Plaintiffs SAF and WVCDL's members—to acquire, keep, and bear handguns for lawful purposes, including but not limited to self-defense, sport, and hunting, just like law-abiding, peaceable adults who are aged twenty-one and older.

61.     The handgun is a ubiquitous armament in American society and is

17

JA023

owned by millions of law-abiding, peaceable citizens for lawful purposes. Handguns are neither "unusual" nor "dangerous" as those terms are used in *Heller*.

62.   The Second Amendment right fully extends to handguns, such as those that Plaintiffs and other similarly situated adults would lawfully, *inter alia*, purchase, possess, keep, bear, and practice proficiency with but for the Handgun Ban and Defendants' enforcement of it.

63.   To be sure, to justify a regulation as "consistent with the Second Amendment's text and historical understanding," it is the government's burden to demonstrate by "analogical reasoning" the existence of "a proper analogue." *Bruen*, 142 S.Ct. 2131-32.

64.   Put another way, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify the regulation, the government…must demonstrate that the regulation is consistent with this Nation's tradition of firearm regulation." *Bruen*, 142 S.Ct. at 2126. "[T]he government may not simply posit that the regulation promotes an important interest." *Id*.

65.   The Handgun Ban is flatly unconstitutional under the Second Amendment, *Heller*, and *Bruen*.

### COUNT I – THE HANDGUN BAN IS UNCONSTITUTIONAL FACIALLY AND AS APPLIED TO ALL PLAINTIFFS UNDER THE SECOND AMENDMENT
(U.S CONST., AMEND. II)
(All Plaintiffs v. Defendants)

71.     The foregoing paragraphs are re-incorporated herein as if set forth in full.

72.     18 U.S.C. §§ 922(b)(l) and 922(c)(1), 27 C.F.R. §§ 478.99(b)(l), 478.124(a), 478.96(b), and the related regulations, policies, practices, and customs designed to implement the same, and the Defendants' enforcement of them, prohibit FFLs from selling handguns and handgun ammunition to the large class of law-abiding, peaceable, and otherwise-eligible adults aged eighteen to twenty-one.

73.     As a direct consequence of the Handgun Ban, individuals in this class are unable to exercise their right to purchase handguns from FFLs, and handgun ammunition from lawful retailers, for self-defense and all lawful purposes protected under the Second Amendment.

74.     Consequently, the Handgun Ban unconstitutionally infringes and imposes an impermissible burden upon the Second Amendment rights of Individual Plaintiffs and similarly situated members of Institutional Plaintiffs.

75.     Absent a declaration that the Handgun Ban unconstitutionally precludes Individual Plaintiffs and similarly situated members of Institutional Plaintiffs from exercising their enumerated rights,

Defendants will continue to enforce the Handgun Ban, contrary to both public policy and the Constitution of the United States, causing irreparable damage to Individual Plaintiffs and similarly situated members of Institutional Plaintiffs.

76. Plaintiffs seek a declaration that the Handgun Ban violates the rights of Individual Plaintiffs Brown and Weekley and similarly situated members of Institutional Plaintiffs SAF and WVCDL and is unconstitutional facially and as applied to them.

77. Individual Plaintiffs and similarly situated members of Institutional Plaintiffs are presently and continuously injured by Defendants' enforcement of 18 U.S.C. §§ 922(b)(1) and (c)(1) and the related regulations, policies, practices, and customs underlying the Handgun Ban, insofar as they violate the Second Amendment rights of Individual Plaintiffs and similarly situated members of Institutional Plaintiffs, by prohibiting licensed dealers from conducting sales of handguns to adults aged eighteen to twenty.

78. If not enjoined by this Court, Defendants will continue to enforce 18 U.S.C. §§ 922(b)(1) and (c)(1) and the related regulations, policies, practices, and customs underlying the Handgun Ban in violation of Individual Plaintiffs' constitutional rights and of all those similarly situated members of Institutional Plaintiffs. Plaintiffs and the class of individuals and entities on whose behalf they bring this case have no

20

plain, speedy, and adequate remedy at law. Damages are
indeterminate or unascertainable and, in any event, would not fully
redress any harm suffered by Plaintiffs, and the class of individuals
and entities on whose behalf they bring this case, because they are
unable to engage in constitutionally protected activity due to the
Handgun Ban.

79.    For the foregoing reasons, Plaintiffs request declaratory and injunctive
relief as hereinafter prayed for.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that this Court enter a
judgment in their favor and against Defendants as follows:

A.    Declare that 18 U.S.C. §§ 922(b)(l) and (c)(1), their derivative
regulations, and all related laws, policies, enforcement practices, and
customs underlying the Handgun Ban, as well as Defendants'
enforcement of same, violate the right to keep and bear arms secured
by the Second Amendment to the United States Constitution both
facially and as-applied;

B.    Permanently enjoin the Defendants, their officers, agents, servants,
employees, all persons in active concert or participation with them,
and all who have notice of the injunction, from enforcing 18 U.S.C. §§
922(b)(l) and (c)(1), their derivative regulations, and all related laws,
policies, enforcement practices, and customs underlying the Handgun

21

JA027

Ban, against Individual Plaintiffs and all similarly situated Institutional Plaintiffs' members;

C.   Award costs and attorney fees and expenses to the maximum extent permitted under 28 U.S.C. § 2412 and any/all other applicable laws; and,

D.   Grant such other and further relief as the Court deems just and proper.

Respectfully submitted, this 27th day of September, 2022.

/s/ John H. Bryan
 John H. Bryan
(WV Bar No. 10259)
JOHN H. BRYAN,
ATTORNEY AT LAW
411 Main Street
P.O. Box 366
Union, WV 24983
(304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com


/s/ Adam Kraut
Adam Kraut
KRAUT AND KRAUT
P.O. Box 101
Westtown, PA 19395
Phone: (610) 696-8200
Email: adam@krautlaw.com
Application *Pro Hac Vice*
Pending

*Attorneys for Plaintiffs*

22

JA028

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

STEVEN ROBERT BROWN,
BENJAMIN WEEKLEY,
SECOND AMENDMENT FOUNDATION, and
WEST VIRGINIA CITIZENS DEFENSE
LEAGUE,

      Plaintiffs,

    v.                     CIVIL ACTION NO. 1:22-CV-80
                                   (Chief Judge Kleeh)

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES,
MERRICK GARLAND, U.S. Attorney General,
in his official capacity, and
STEVEN DETTELBACH, Director
of the ATF, in his official capacity,

      Defendants.

_____

MEMORANDUM OPINION AND ORDER

      Pending before the Court are Defendants' Motion to Dismiss and Plaintiffs' Motion for Summary Judgment. ECF Nos. 23, 28. For the reasons that follow, Defendants' Motion to Dismiss is **DENIED** and Plaintiffs' Motion for Summary Judgment is **GRANTED**.

I.    <u>FACTUAL BACKGROUND</u>

A.  **Undisputed Facts**

      This case requires the Court to assess the protected right of the people under the Second Amendment to the Constitution to keep and bear arms. U.S. Const. amend. II. Plaintiffs Robert Brown ("Brown") and Benjamin Weekley ("Weekley"), individuals, are "law-abiding, responsible adult citizens who wish to purchase

Brown v. ATF                                                    1:22cv80

## MEMORANDUM OPINION AND ORDER

handguns." ECF No. 11, First Am. Compl. ¶¶ 2, 7-8; see also ECF No. 28-3, Brown Decl.; ECF No. 28-2, Weekley Decl. Brown and Weekley are citizens of West Virginia and the United States of America and are between the ages of eighteen and twenty-one. Am. Compl. ¶¶ 7-8. Brown and Weekley, as law-abiding, responsible adult citizens, would purchase handguns and handgun ammunition from Federal Firearms Licensees ("FFLs") but for the right proscribed by 18 U.S.C. §§ 922(b)(1) and (c)(1). Id. ¶¶ 1-3.

Plaintiffs Second Amendment Foundation ("SAF")[1] and West Virginia Citizens Defense League ("WVCDL") are organizational plaintiffs. Id. ¶¶ 9-10. WVCDL "is [a] nonpartisan, nonprofit membership organization formed in 2008 with a purpose of preserving, expanding, and perpetuating the right to keep and bear arms in the State of West Virginia." Id. ¶ 10. WVCDL includes adult members between the ages of eighteen years and twenty years who, absent the handgun ban, would purchase handguns and the associated ammunition. Id. Brown and Weekley are members of both organizational plaintiffs. Id. ¶¶ 7-8.

Plaintiffs assert claims against Defendants Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"); Steven

---

[1] In the briefings, the parties agree to the voluntary dismissal, without prejudice, of SAF due to its involvement in Reese v. ATF, No. 6:20-cv-01438 (W.D. La. May 5, 2021). Therefore, SAF is **DISMISSED WITHOUT PREJUDICE** from this action and is not part of the Court's opinion herein.

Brown v. ATF                                                    1:22cv80

**MEMORANDUM OPINION AND ORDER**

Dettelbach, the Director of ATF; and Merrick Garland, Attorney General of the United States, alleging injuries-in-fact due to the statutory prohibition against 18-to-20-year-olds from purchasing handguns and handgun ammo. Id. ¶¶ 11-13. Brown and Weekley both attempted to purchase handguns from FFLs in and around June and July 2022. Id. ¶¶ 18-30. Each FFL refused the sales because they were under twenty-one years of age. Id.

**B. Defendants' Response**

For purposes of Plaintiffs' Rule 56 motion, the Court treats these facts as undisputed. Defendants filed a Response to Plaintiffs' Statement of Undisputed Material Facts in Support of Plaintiffs' Motion for Summary Judgment [ECF No. 34] pursuant to this District's Local Rule of Civil Procedure 7.02. However, Defendants' submission does not create any genuine issues of material fact sufficient to preclude consideration of summary judgment. That Response lists eight (8) factual statements from Plaintiffs' motion and, for six (6) of those, simply offers "Statement disputed. Defendants have no knowledge as to the truth of this statement." ECF No. 34. Simply denying any knowledge about factual statements made in a sworn declaration does not carry a non-movant's burden under Rule 56. Another part of the response simply notes Defendants' inability to verify factual assertions. Id.

Brown v. ATF                                                      1:22cv80

## MEMORANDUM OPINION AND ORDER

Although the Court is required to make all inferences in the light most favorable to the non-movant, Defendants' burden in facing a Rule 56 motion is not insignificant. As Judge Bailey summarized,

> [a]dditionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." [Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)]. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 323-25; Anderson, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249 (citations omitted). Although all justifiable inferences are to be drawn in favor of the non-movant, the non-moving party "cannot create a genuine issue of material fact through mere speculation of the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985).

Anderson v. Profrac Mfg., LLC, No. 5:20-CV-227, 2022 WL 2902846, at *2 (N.D.W. Va. May 25, 2022) (Bailey, J.). Defendants do not even engage in speculation based on stacked inferences. They simply "dispute" Plaintiffs' factual statement averring lack of knowledge to "verify." Rule 56 demands more. Moreover, upon review of the docket, neither party engaged in any discovery efforts, nor argued that additional time was needed for discovery.

Brown v. ATF                                                1:22cv80

## MEMORANDUM OPINION AND ORDER

See Rule 56(d). Thus, there is no genuine issue of material fact present here. See Rule 56(e)(2).

## II.  PROCEDURAL HISTORY

On August 30, 2022, Brown, pro se, filed suit against the ATF, the Director, the Attorney General, and Patrick Morrisey, the West Virginia Attorney General. ECF No. 1. On the same date, summonses were issued to the initial defendants and notice of general guidelines for appearing pro se in federal court was given. ECF Nos. 3, 4. The next day, the case was referred to the Honorable Michael J. Aloi, United States Magistrate Judge, for written orders or reports and recommendations on dispositive matters and for decisions of any other matters that may arise. ECF No. 5; 28 U.S.C. §§ 636(b)(1)(A), 636(b)(1)(B); L.R. Civ. P. 7.02(c), 72.01.

On September 23, 2022, Brown's counsel filed a notice of appearance and moved for pro hac vice admission for a visiting attorney. ECF Nos. 8-10. On September 27, 2022, the First Amended Complaint for Declaratory Judgment and Injunctive Relief was filed on behalf of Brown, Weekley, SAF, and WVCDL, pleading allegations against Defendants ATF, Dettelbach, and Garland. ECF No. 11. The next day, summonses were issued to those defendants. ECF No. 12. Because Plaintiffs retained counsel; the Court vacated its referral order and terminated the referred status of the case. ECF No. 14.

JA033

Brown v. ATF                                                    1:22cv80

<u>MEMORANDUM OPINION AND ORDER</u>

On December 12, 2022, Defendants, by counsel, filed *Motion to Dismiss Plaintiffs' First Amended Complaint*. ECF Nos. 23, 24. Plaintiffs timely responded in opposition to Defendants' motion and moved for summary judgment. ECF Nos. 25, 27, 28, 29. Defendants replied in support of their motion to dismiss and in opposition to Plaintiffs' motion for summary judgment. ECF Nos. 30, 31, 33, 34, 35. Plaintiffs replied in support of their motion for summary judgment and in opposition to Defendants' motion. ECF No. 36. Plaintiffs and Defendants have filed supplemental authority during the pendency of their motions. ECF Nos. 37, 38, 39. Thus, the motions are fully briefed and ripe for review.

### III. <u>LAW</u>

**A. Legal Standards**

**1. Motion to Dismiss**

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may move to dismiss a claim for lack of subject-matter jurisdiction. A defendant challenges subject matter jurisdiction in two ways: (1) "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based," or (2) "that the jurisdictional allegations of the complaint [are] not true." <u>Kerns v. United States</u>, 585 F.3d 187, 192 (4th Cir. 2009) (quoting <u>Adams v. Bain</u>, 697 F.2d 1213, 1219 (4th Cir. 1982)). A challenge of subject matter jurisdiction in the first manner, as

**Brown v. ATF**                                                **1:22cv80**

MEMORANDUM OPINION AND ORDER

---

Defendants contend here, conjures "the same procedural protection
. . . [the plaintiff] would receive under a Rule 12(b)(6)
consideration." Id. (citing Adams, 697 F.2d at 1219).

Under Rule 12(b)(6), a defendant may move for dismissal upon
the ground that a complaint does not "state a claim upon which
relief can be granted." In ruling on a 12(b)(6) motion to dismiss,
a court "must accept as true all of the factual allegations
contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d
181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89,
94 (2007)). A court is "not bound to accept as true a legal
conclusion couched as a factual allegation." Papasan v. Allain,
478 U.S. 265, 286 (1986).

A court should dismiss a complaint if it does not contain
"enough facts to state a claim to relief that is plausible on its
face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).
Plausibility exists "when the plaintiff pleads factual content
that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." Ashcroft v. Iqbal,
556 U.S. 662, 678 (2009). A motion to dismiss "does not resolve
contests surrounding the facts, the merits of a claim, or the
applicability of defenses." Republican Party of N.C. v. Martin,
980 F.2d 942, 952 (4th Cir. 1992).

Brown v. ATF                                              1:22cv80

### MEMORANDUM OPINION AND ORDER

#### 2. Motion for Summary Judgment

Summary judgment, however, is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party must "make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." Id. at 317–18. Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The Court views the evidence in the light most favorable to the non-moving party and draws any reasonable inferences in the non-moving party's favor. See Fed. R. Civ. P. 56(a); see Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

Brown v. ATF                                                    1:22cv80

### MEMORANDUM OPINION AND ORDER

#### B. Applicable Law

"A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.  In District of Columbia v. Heller, 544 U.S. 570 (2008), the Supreme Court of the United States recognized that the Second Amendment codified a pre-existing "right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense."  New York State Rifle & Pistol Association, Inc. v. Bruen, 142 S. Ct. 2111, 2122 (2022) (citing Heller, 544 U.S. at 570).  This right, however, is not unlimited: our Nation's historical tradition teaches that there are certain "longstanding," "presumptively lawful regulatory measures" that the Second Amendment did not abrogate.  Heller, 554 U.S. at 626-27, n.26.  The Heller court then set forth a two-step framework for assessing Second Amendment claims that combined a historical analysis with means-end scrutiny.  See United States v. Pruess, 703 F.3d 242, 245 (4th Cir. 2012) (citing Heller, 544 U.S. at 680).

In Bruen, the Supreme Court "kep[t] with Heller" but "decline[d] to adopt that two-part approach," finding it to be "one step too many." Bruen, 142 S. Ct. at 2126-27.  Bruen rejected any "means-end scrutiny" entirely.  Id. at 2125-26.  "Bruen effected a sea change in Second Amendment law." Maryland Shall

Brown v. ATF                                                    1:22cv80

<u>MEMORANDUM OPINION AND ORDER</u>

Issue, Inc. v. Moore, 2023 WL 8043827, at *2 (4th Cir. Nov. 21,
2023) (Richardson, J.).   <u>Bruen</u>'s holding is more rooted in
textualism and originalism: if the "plain text [of the Second
Amendment] covers an individual's conduct, [then] the Constitution
presumptively protects that conduct." <u>Bruen</u>, 142 S. Ct. at 2125-
26.   "To justify its regulation, the government may not simply
posit that the regulation promotes an important interest." <u>Id</u>.
To demonstrate the regulation of that conduct is within the bounds
of the Second Amendment, "the government must demonstrate that the
regulation is consistent with the Nation's historic tradition of
firearm regulation.   Only if a firearm regulation is consistent
with the Nation's historical tradition may a court conclude that
the individual's conduct falls outside the Second Amendment's
'unqualified command.'" <u>Id.</u> at 2126.   As <u>Heller</u> also focused on
the Nation's traditional understanding of the Second Amendment,
this was not considered a novel pronouncement.   <u>See</u> <u>id.</u> at 2131
("The test that we set forth in <u>Heller</u> and apply today requires
courts to assess whether modern firearms regulations are
consistent with the Second Amendment's text and historical
understanding.").

      In <u>Bruen</u>, the Supreme Court emphasized that the petitioners
were "two ordinary, law-abiding, adult citizens," making them
"part of 'the people' whom the Second Amendment protects." <u>Id</u>. at

Brown v. ATF                                             1:22cv80

MEMORANDUM OPINION AND ORDER

2119.  "Like most rights, the right secured by the Second Amendment
is not unlimited.  From Blackstone through the 19th-century cases,
commentators and courts routinely explained that the right was not
a right to keep and carry any weapon whatsoever in any manner
whatsoever and for whatever purpose . . . ."  <u>Heller</u>, 554 U.S. at
626.

"Although its meaning is fixed according to the
understandings of those who ratified it, the Constitution can, and
must, apply to circumstances beyond those the Founders
specifically anticipated."  <u>Bruen</u>, 142 S. Ct. at 2132 (internal
citation omitted).  Indeed, courts are instructed to use analogies
to "historical regulations of 'sensitive places' to determine that
modern regulations prohibiting the carry of firearms in *new* and
analogous sensitive places are constitutionally permissible."  <u>Id.</u>
(emphasis in original).

The Fourth Circuit recently summarized the task before this
Court.  The Supreme Court

> supplied an analysis centered on the Second
> Amendment's text and history.  [<u>Bruen</u>,] 142 S.
> Ct. at 2126-30.  The Court explained that
> "when the Second Amendment's plain text covers
> an individual's conduct, the Constitution
> presumptively protects that conduct."  <u>Id.</u> at
> 2126.  At that point, the challenged
> regulation is unconstitutional unless the
> government can show that "the regulation is
> consistent with this Nation's historical
> tradition of firearm regulation."  <u>Id</u>.  Only
> then "may a court conclude that the

**Brown v. ATF**                                                          **1:22cv80**

### MEMORANDUM OPINION AND ORDER

> individual's conduct falls outside the Second
> Amendment's 'unqualified command.'"   Id.
> (quoting Konigsberg v. State Bar of Cal., 366
> U.S. 36, 50 n.10 (1961)).

Maryland Shall Issue, Inc., 2023 WL 8043827, at *3.

With this context, 18 U.S.C. § 922(b)(1) makes it

> unlawful for any licensed importer, licensed
> manufacturer, licensed dealer, or licensed
> collector to sell or deliver [] any firearm or
> ammunition to any individual who the licensee
> knows or has reasonable cause to believe is
> less than eighteen years of age, and, if the
> firearm, or ammunition is other than a shotgun
> or rifle, or ammunition for a shotgun or
> rifle, to any individual who the licensee
> knows or has reasonable cause to believe is
> less than twenty-one years of age.

18 U.S.C. § 922(c)(1) prohibits FFLs from selling firearms to those

who do not appear in person unless the buyer submits a sworn

statement affirming he or she is "twenty-one years or more of age"

"in the case of any firearm other than a shotgun or rifle."  ATF's

implementing regulations are 27 C.F.R. § 478.99(b) and § 478.124.

Chief Counsel of the ATF wrote an opinion letter in 1983 explaining

that FFLs

> are prohibited from selling or delivering
> handguns to person under the age of
> 21. However, a minor or juvenile is not
> prohibited by Federal law from possessing,
> owning, or learning the proper usage
> of firearms since any firearm that the parents
> or guardian desire the minor to have can be
> obtained by the parents or guardian.

**Brown v. ATF**                                                **1:22cv80**

MEMORANDUM OPINION AND ORDER

ECF No. 24-1, Ex. A, Opinion of the Chief Counsel of ATF, No 23362 (Dec. 5, 1983) (hereinafter the "ATF Opinion Letter").

## IV.  <u>DISCUSSION</u>

Because adults between eighteen and twenty years old are statutorily precluded by 18 U.S.C. §§ 922(b)(1) and (c)(1) from buying handguns and handgun ammunition from a licensed dealer, Plaintiffs challenge the statutes as facially unconstitutional and as applied to them.  Plaintiffs also request an injunction barring enforcement of the statute for the same reason.

Defendants filed the pending motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and argue Plaintiffs lack standing to bring this action, and even if they have standing, the historical background of the Second Amendment supports the government's restriction of the purchase of handguns and handgun ammunition to lawful adult citizens over the age of twenty-one. ECF Nos. 23, 24.

Plaintiffs filed their motion for summary judgment and response in opposition to Defendants' motion to dismiss, contending they have standing to sue and 18 U.S.C. §§ 922(b)(1) and (c)(1) are both facially unconstitutional and unconstitutional as applied to them because the statutes are inconsistent with the Nation's historical tradition.  ECF Nos. 28, 29.

Brown v. ATF                                                    1:22cv80

<u>MEMORANDUM OPINION AND ORDER</u>

**A. Standing**

The Court, of course, starts with jurisdiction particularly given Defendants advance a standing challenge to Plaintiffs' claims.   The judicial power vested by Article III of the Constitution extends only to "Cases" and "Controversies."   U.S. Const. art. III, § 2, cl. 1.   Because federal court jurisdiction is limited to cases or controversies, plaintiffs must "establish they have standing to sue." <u>Clapper v. Amnesty Int'l USA</u>, 568 U.S. 398, 408 (2013) (quoting <u>Raines v. Byrd</u>, 521 U.S. 811, 818 (1997)).   Thus, the Court must first address Plaintiffs' standing to bring suit as challenged in Defendants' motion. <u>See Baehr v. Creig Northrop Team, P.C.</u>, 953 F.3d 244, 252 (4th Cir. 2020) ("Article III standing is 'part and parcel of the constitutional mandate that the judicial power of the United States extend only to "cases" and "controversies".'") (internal citation omitted).   Article III standing is proven when plaintiffs have established an injury-in-fact, causation, and redressability. ‼ <u>Baehr</u>, 953 F.3d at 252 (citing <u>Lujan v. Defs. Of Wildlife</u>, 504 U.S. 555, 560-61 (1992)).   The burden to establish standing is on the party asserting it. <u>Lujan</u>, 504 U.S. at 560-61.

"An association has associational standing when at least one of its 'identified' members 'would otherwise have standing to sue in their own right, the interests at stake are germane to the

Brown v. ATF                                                    1:22cv80

MEMORANDUM OPINION AND ORDER

organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'"  Outdoor Amusement Bus. Ass'n v. Dep't of Homeland Sec., 983 F.3d 671, 683 (4th Cir. 2020) (internal citation omitted).  Defendants allege Plaintiffs lack standing because they have failed to demonstrate an injury-in-fact.[2]

To establish an injury-in-fact, a plaintiff must "show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  Spokeo, Inc. v. Robins, 578 U.S. 330, 332 (2016) (citing Lujan, 504 U.S. at 560).  An injury is particularized if it "affect[s] the plaintiff in a personal and individual way," and it is concrete if it is "'de facto'; that is, it must actually exist."  Id. at 339-40 (citations omitted).

Brown and Weekley contend they have suffered an injury-in-fact because they wish to purchase handguns and handgun ammunition from FFLs but are precluded by statute because of their ages.  Brown and Weekley have each attempted to purchase handguns and associated ammunition from FFLs but have been turned away.  ECF

---

[2]  The Government does not challenge either the causation or redressability prongs of the standing analysis.  The burden of showing standing rests on Plaintiff.  See Heater v. General Motors, LLC, 568 F. Supp.3d 626, 643 (N.D.W. Va. 2021) (citing Lujan, 504 U.S. at 560-61) (Keeley, J.).  The Court, upon review of the record, finds that burden has been met on both causation and redressability.

15

JA043

Brown v. ATF                                                    1:22cv80

### MEMORANDUM OPINION AND ORDER

No. 28-3, Brown Decl.; ECF No. 28-2, Weekley Decl.  Defendants argue Brown and Weekley have not suffered an injury at all because federal statutes and regulations do not preclude 18-, 19-, and 20-year-olds from *possessing* handguns and handgun ammunition, so long as Plaintiffs' parents or guardians purchase them from FFLs as a bona fide gift.  ECF No. 24.

Defendants generally miss the point and Plaintiffs' injury is clear.  Plaintiffs do not dispute that 18-to-20-year-olds who are law-abiding adults and not otherwise banned from firearm possession are not prohibited from possessing handguns.  Brown and Weekley's injury prompting the filing of this suit is that they cannot *purchase* handguns and handgun ammunition from FFLs as a result of the age-based ban.

Defendants' specific arguments are likewise unavailing. First, the suggestion Plaintiffs suffer no injury because a parent or guardian can simply purchase the gun and give it to an 18- to 20-year-old overly minimizes Plaintiffs' plight.  Deprivation of a constitutional right is a deprivation and, necessarily, an injury in fact, no matter if an "easy" and lawful work-around exists. Moreover, the Supreme Court of the United States previously rejected the Government's reasoning in a different context.  In Brown v. Entertainment Merchants Association, 564 U.S. 786, 802 (2011) the Supreme Court, deciding a First Amendment issue, struck

Brown v. ATF                                                    1:22cv80

MEMORANDUM OPINION AND ORDER

down a California law prohibiting the sale (but not the possession) of violent video games to children under the age of 18.  Like this statute, the California law allowed parents (or aunts and uncles) to purchase and provide the games to children.  Id.  Yet, the Supreme Court found this prohibition on the sale of games implicated children's First Amendment rights and proceeded to strike down the regulation under a **strict scrutiny** analysis.  Id. at 805 (emphasis added).

Brown and Weekley's injury, therefore, is not solved by the ability to receive a gift of a handgun from a parent or guardian. See Fraser v. ATF, 2023 WL 3355339 (E.D. Va. 2023) (holding 18-to-20-year-olds have standing to challenge the age-based handgun ban and the statutory age prohibition violates the Second Amendment); see also Nat. Rifle Ass'n of Am., Inc. v. ATF, 700 F.3d 185, 191-92 (5th Cir. 2012) ("by prohibiting FFLs from selling guns to 18-to-20 year-olds, the laws cause those persons a concrete particularized injury-i.e., the injury of not being able to purchase handguns from FFLs.").

The Government's suggestion erroneously draws too large a distinction between the right to possess and the right to purchase a firearm.  Although the Second Amendment does not expressly protect the right to "purchase" firearms, that right must exist by implication if the right to "keep and bear arms" is to have its

17

JA045

Brown v. ATF                                                    1:22cv80

MEMORANDUM OPINION AND ORDER

full meaning and effect.  "Commonsense and logic tell us that,
unless one is a maker of guns, the right to 'keep'/have a gun
necessarily means that one must purchase it, steal it, be given it
by another, or find one that another has lost."  Fraser, 2023 WL
5617899, at *7.

Judge Payne's analysis in Fraser proved prescient.  Unlike
him, the Court now has the benefit of the Fourth Circuit's decision
in Maryland Shall Issue, Inc. v. Moore.[3]  There, in the context of
determining whether purchasing a firearm falls within the scope of
the Second Amendment's protection, see infra, the Fourth Circuit
found the issue "not complicated."  Id. at *4.  "If you do not
**already** own a handgun, then the only way to 'keep' or 'bear' one
is to get one, either through sale, rental, or gift."  Id.
(emphasis in original).  The Fourth Circuit also dismissed the
suggestion that the 30-day waiting period at issue there under
Maryland law was not a sufficient deprivation to run afoul of the
Second Amendment.  Discussing the Founders' use of "infringed" in
the Amendment's text, the court left the issue undecided but noted
the "Second Amendment's scrutiny is not exclusively reserved for

---

[3] The Court was finalizing this Memorandum Opinion as the Maryland
Shall Issue opinion was published on November 21, 2023.

JA046

Brown v. ATF                                                    1:22cv80

MEMORANDUM OPINION AND ORDER

laws that wholly or effectively prohibit firearm possession." Id. at *5 n.8.[4]

This Court, therefore, has no hesitation concluding Plaintiffs' have sufficiently pled and demonstrated an injury-in-fact. The ban 18 U.S.C. § 922 imposes on 18-to-20-year-old law-abiding citizens is a more significant deprivation than the 30-day waiting period in Maryland Shall Issue. There, the Fourth Circuit concluded "the temporary deprivation that Plaintiffs allege is a facially plausible Second Amendment violation." Maryland Shall Issue, Inc., 2023 WL 8043827, at *5. Thus, the individual Plaintiffs have standing.

Because the individual plaintiffs have established Article III standing, and they are members of WVCDL, WVCDL has standing. Outdoor Amusement Bus. Ass'n, 983 F.3d at 683; see also Firearms Policy Coalition, Inc. et al. v. McCraw, 623 F. Supp.3d 740, 746-47 (N.D. Tex. 2022). Because Plaintiffs have standing to bring suit, Defendants' Rule 12(b)(1) motion is **DENIED** on this ground.

_____

[4] In addition, the decision of the Fourth Circuit in Lane v. Holder, 703 F.3d 668 (4th Cir. 2012), although not directly dispositive, is instructive. In Lane, the court assessed the issue of standing in the Second Amendment context. Although the Fourth Circuit ultimately held the Lane plaintiffs (would-be firearms purchasers) had no standing, it contrasted the regulations in question there with regulations that would burden consumers "directly." Id. at 672. The statute and regulations Plaintiffs challenge here do just that.

19
JA047

Brown v. ATF                                                1:22cv80

MEMORANDUM OPINION AND ORDER

   **B. Plaintiffs' Constitutional Challenge to 18 U.S.C. § 922(b)(1)
      and 18 U.S.C. § 922(c)(1)**

      **1. The act of purchasing a firearm is protected by the Second
         Amendment.**

      First, the Court must determine whether the act of purchasing

a firearm is within the Second Amendment's "right to keep and bear

arms."   See Bruen, 142 S. Ct. at 2126; see also Maryland Shall

Issue, Inc., 2023 WL 8043827, at *5 ("So [Plaintiffs] just need to

show that the law regulates a course of conduct that falls within

the Amendment's plain text, i.e., their ability "to possess and

carry weapons in case of confrontation.'" (quoting Heller, 554

U.S. at 592)).    If it does, "the Constitution presumptively

protects that conduct."   Bruen, 142 S. Ct. at 2126.   Plaintiffs

maintain "[t]he right to keep arms necessarily implies there is a

right to acquire arms."   ECF No. 29 at 12.

      It appears the Fourth Circuit now agrees.   Again, in Maryland

Shall Issue, Inc., Judge Richardson observed:

             To start, you might note that the Amendment's
             text protects only the right to "keep and
             bear" arms.   U.S. Const. amend. II.   But, on
             its face, the challenged law says nothing
             about whether Plaintiffs may "keep" or "bear"
             handguns.    It only restricts Plaintiffs'
             ability to "purchase, rent, or receive" them.
             § 5-117.1(c).   How, then, does the law
             regulate the right to keep and bear arms?

             The answer is not complicated.   If you do not
             **already** own a handgun, then the only way to
             "keep" or "bear" one is to get one, either
             through sale, rental, or gift.   And the

                                 20

JA048

Brown v. ATF                                                    1:22cv80

MEMORANDUM OPINION AND ORDER

> challenged law cuts off all three avenues—at
> least, for those who do not comply with its
> terms.

Maryland Shall Issue, Inc., 2023 WL 8043827, at *4 (emphasis in

original).   The Court notes that Maryland Shall Issue, Inc.

"appears" to answer the question presented here as that case

focused more on the perceived tension between temporary or

permanent bans on possession or acquisition of firearms.   Thus,

the Court continues its analysis of this question which leads to

the same conclusion required under Judge Richardson's recent

opinion.

At the first step, Bruen requires a court to conduct a

"textual analysis" that is "focused on the 'normal and ordinary'

meaning of the Second Amendment's language."   Id. at 2127 (quoting

Heller, 554 U.S. at 576-77); see also Maryland Shall Issue, Inc.,

2023 WL 8043827, at *3 ("The first question Bruen asks is whether

Plaintiffs' proposed course of conduct is protected by the Second

Amendment's plain text." (citation omitted)).   This inquiry into

the "normal meaning" of the "words and phrases used" is backward

looking, focused on what those words meant in 1791 when the Second

Amendment was ratified, and "excludes secret or technical meanings

that would not have been known to ordinary citizens in the founding

generation."   Heller, 554 U.S. at 576-77.   A court applying the

first step of "Heller's methodological approach," Bruen, 142 S.

21

JA049

Brown v. ATF                                          1:22cv80

MEMORANDUM OPINION AND ORDER

Ct. at 2127, can employ several tools in discerning the text's normal and ordinary meaning.  These may include: (1) comparison of a phrase within the Second Amendment to the same or similar language used elsewhere in the Constitution, Heller, 554 U.S. at 579-81 (comparing "right of the people" in the Second Amendment to the same and similar language in the First, Fourth, and Ninth Amendments); (2) consideration of historical sources, including dictionaries, founding-era statutes, 18th-century legal treatises, and others, that could suggest a common understanding of the terms used, id. at 581-92 (examining the meaning of "keep and bear arms"); and (3) evaluation of the historical background leading to the Second Amendment's adoption, id. at 592-95. See also Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco, and Explosives, 5 F.4th 407, 418-19, 421-23 (4th Cir. 2021) (discussing sources relevant to understanding the original public meaning of the Second Amendment), vacated as moot, 14 F.4th 322, 328 (4th Cir. 2021); Nat'l Rifle Ass'n, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives, 714 F.3d 334, 337 (5th Cir. 2013) ("NRA II") (Jones, J., dissenting from denial of rehearing en banc) ("First, the text of the Constitution was interpreted [in Heller] in light of historical documents bearing on each phrase and clause of the

22

JA050

Brown v. ATF                                          1:22cv80

<u>MEMORANDUM OPINION AND ORDER</u>

Second Amendment as those were understood at the time of its drafting.").[5]

   Being a functional prohibition on handgun buyers, the statutes at issue "make it considerably more difficult for a person lawfully to *acquire* and keep a firearm, including a handgun, for the purpose of self-defense in the home—the 'core lawful purpose' protected by the Second Amendment." <u>Heller v. District of Columbia</u>, 670 F.3d 1124, 1256 (D.C.C. 2011) (emphasis added). Common sense also tells us that the right to keep and bear arms includes the right to purchase them. <u>See also Fraser</u>, 2023 WL 3355339, *8 (finding "consistent with the text and logic of the Second Amendment . . . the right to purchase a gun falls within the Second Amendment's plain text."). The Court finds Judge Payne's reasoning here particularly astute and, therefore, persuasive.

> The Second Amendment accords protection of "the right of the people to keep and bear Arms," by providing that the right "shall not be **infringed**." U.S. Const. Amend. II (emphasis added). The Second Amendment is unique in its use of "infringed" for the word does not appear anywhere else in the Constitution. Despite its uniqueness, the term "infringed" has received little attention

---

[5] Judge Jones' opinion was a dissenting one; however, her reasoning, including her discussion of <u>Heller's</u> analytical approach, largely tracks the test clarified in <u>Bruen</u>. Furthermore, as Plaintiffs note in their briefing, her discussion of the historical framework surrounding ratification of the Second Amendment stands unassailed.

Brown v. ATF                                          1:22cv80

### MEMORANDUM OPINION AND ORDER

by scholars or courts.  However, <u>Heller</u> took the view that "infringed" "implicitly recognizes the pre-existence of the right." 554 U.S. at 592.  As articulated in <u>Heller</u>, the Second Amendment does not serve to grant a right but rather preserves a right that the people already possessed.  Therefore, to "keep and bear" serves to identify the right protected, not to define the right in the first instance.

The definition of "infringe" further supports the conclusion that the pre-existing right includes a right to purchase.  "Infringe" is defined in modern dictionaries as "to encroach upon in a way that violates law or the rights of another."  "Infringe," <u>Merriam-Webster.com</u>.  "Encroach," in turn, has two definitions: "to enter by gradual steps or by stealth into the possessions or rights of another" and "to advance beyond the usual or proper limits."  "Encroach," <u>Merriam-Webster.com</u>. Those words have possessed the same meaning since the sixteenth century and the Founders would have understood them in the same way.  Not simply protecting the heartland of the preserved right, the Second Amendment protects the environs surrounding it to prevent any encroachment on the core protections.  Thus, by virtue of the word "infringed," the Second Amendment's protective textual embrace includes the conduct necessary to exercise the right ("to keep and bear") and that, as explained above, includes the right to purchase arms so that one can keep and bear them.

<u>Id</u>. at *7.

Brown v. ATF                                                    1:22cv80

MEMORANDUM OPINION AND ORDER

The Court's conclusion here is in line with decisions of multiple federal courts of appeal[6] which, when ascertaining the textual reach of the Second Amendment, "have held that the Second Amendment protects ancillary rights necessary to the realization of the core right to possess a firearm for self-defense." Teixeira v. Cnty. of Alameda, 873 F.3d 670, 677 (9th Cir. 2017). Among these rights is "the ability to acquire arms." Id. at 677-78 (citing to Ezell v. City of Chicago, 651 F.3d 684, 704 (7th Cir. 2011)). District courts have concluded the same. See United States v. Quiroz, 629 F.Supp.3d 511, 516 (W.D. Tex. 2022); Ill. Ass'n of Firearms Retailers v. City of Chi., 961 F.Supp.2d 928, 930 (N.D. Ill. 2014); see also Fraser, 2023 WL 3355339, at *8;

_____

[6] Again, the Fourth Circuit in Maryland Shall Issue, Inc. appears to have recently addressed this question. Nonetheless, its prior decisions also provide support for the conclusion reached here. In United States v. Hosford, the Fourth Circuit concluded the Second Amendment does not provide a constitutional right to **sell** firearms. 843 F.3d 161, 166 (4th Cir. 2016). There, the court held, consistent with the Heller exceptions, "the prohibition against unlicensed firearm dealing is a longstanding condition or qualification on the commercial sale of arms and is thus facially constitutional." Id. Hosford distinguished the constitutional regulations in question governing the commercial sale of firearms, from regulations infringing on individuals' ability to "purchase or sell firearms owned for personal, self-defensive use." Id. at 168. This leads to the natural and logical conclusion the Fourth Circuit considers the right to purchase a firearm commensurate to the right to keep a gun. See Sitzmann, "High-Value, Low-Value, and No-Value Guns," 86 U. Chi. L. Rev. at 2023 ("the Fourth, Ninth, and Seventh Circuits all support a single, underlying message: there is no individual right to sell a firearm conferred by the Constitution, even though there is a right to acquire and use one").

Brown v. ATF                                                    1:22cv80

MEMORANDUM OPINION AND ORDER

McCraw, 623 F. Supp.3d 740; and, Worth v. Harrington, Case No. 21-CV-1348, 2023 WL 2745673 (D. Minn. March 31, 2023).   As the Northern District of Illinois concluded, "the ban on guns sales and transfers prevents [individuals] from fulfilling ... the most fundamental pre-requisite of legal gun ownership—that of simple acquisition."   Ill. Ass'n of Firearms Retailers, 961 F.Supp.2d at 938.

Because "the substance of the challenged laws dictates that they are a functional prohibition on buyers," Hirschfeld, 5 F.4th at 417, vacated by 14 F.4th 322 (4th Cir. 2021), and the act of purchasing a handgun is within the bounds of the Second Amendment, Heller, 670 F.3d at 1256, the Court turns to whether 18-to-20 year olds are included in "the people" of the Second Amendment.   See Maryland Shall Issue, Inc., 2023 WL 8043827, at *3 (summarizing the two-part assessment – "course of conduct" and "the people").

**2. 18-to-20-year-old law abiding citizens are part of "the people" whom the Second Amendment protects.**

Next the Court analyzes whether, under the Second Amendment, "ordinary, law-abiding, adult citizens" between the ages of 18-to-20 years, are "part of 'the people' whom the Second Amendment protects." Bruen, 142 S. Ct. at 2119.   The Court finds that they are.

Initially, and as Bruen requires, the Court starts with the actual text of the Second Amendment which is silent as to any age

**Brown v. ATF**                                                     **1:22cv80**

### MEMORANDUM OPINION AND ORDER

requirements or restrictions on the rights enshrined therein.  That
omission is significant when compared to other Constitutional
provisions.    For   example,   minimum   age   requirements   are
constitutionally   imposed   on   membership   in   the   House   of
Representatives (25 years of age), the United States Senate (30
years age) and, of course, the office of President of the United
States (35 years of age).  <u>See</u> U.S. Const. art I, § 2; art. I, §
3 and art. II, § 1.   Clearly, the authors of the original
Constitution and the Bill of Rights contemplated age restrictions
during their drafting work.  The Second Amendment only refers to
"the people."   <u>Heller</u> labeled "the people" a term of art
encompassing "all members of the political community, not an
unspecified subset." <u>Heller</u>, 554 U.S. at 580.

Although the Supreme Court "has not precisely defined" the
meaning of "the people" in the Second Amendment, it has provided
guidance as to the reach of the term as used in the Constitution.
<u>See</u> <u>United States v. Jackson</u>, No. ELH-22-141, 2023 WL 2499856, at
*6 (D. Md. March 13, 2023).  For example, the Supreme Court has
noted

> "the   people"   protected   by   the   Fourth
> Amendment,  and  by  the  First  and  Second
> Amendments, ... refers to a class of persons
> who are part of a national community or who
> have   otherwise   developed   sufficient
> connection with this country to be considered
> part of that community.

Brown v. ATF                                                  1:22cv80

### MEMORANDUM OPINION AND ORDER

United States v. Verdugo-Urquidez, 494 U.S. 259, 265 (1990).
Specific to the Second Amendment, the Court is mindful of Heller's
command that "a strong presumption [exists] that the Second
Amendment right is exercised individually and belongs to **all
Americans**." Heller, 554 U.S. at 581 (emphasis added).

Other constitutional provisions lend credence to a broad
interpretation of the phrase "the people." The First and Fourth
Amendments, like the Second, refer to "the people." And both
Heller and Verdugo-Urquidez strongly suggest that the term "the
people" is defined consistently throughout the Constitution. On
this point, the First Amendment has been interpreted to apply to
all persons, even those under the age of 18. See, e.g., Tinker v.
Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 506 (1969) (free
speech); see also W. Va. State Bd. of Educ. v. Barnette, 319 U.S.
624, 642 (1943) (free exercise). And while the First Amendment is
limited in some contexts (such as the forum or content of the
speech), age does not serve as a basis for limiting the
constitutionally protected right. See Tinker, 393 U.S. at 506
("First Amendment rights, applied in light of the special
characteristics of the school environment, are available to
teachers and students. It can hardly be argued that either students
or teachers shed their constitutional rights to freedom of speech
or expression at the schoolhouse gate.").

Brown v. ATF                                                    1:22cv80

### MEMORANDUM OPINION AND ORDER

The Fourth Amendment likewise protects individuals regardless of age.  See New Jersey v. T.L.O., 469 U.S. 325, 334 (1985). Certainly, the context of a search — e.g., whether on or off school property — can affect the expectations of privacy.  Id. at 337-40.  But the expectation of privacy is not affected based on the age of the person being searched.  Rather, the context of a search is the distinguishing factor.  See id.

Therefore, because neither the First nor Fourth Amendments exclude, nor have been interpreted to exclude, 18-to-20-year-olds, the Court can discern no reason to read an implicit age restriction into the Second Amendment's plain text either.

Beyond the First and Fourth Amendments, other constitutional provisions, which do not specifically mention "the people," support the Court's conclusion that "the people" protected by the Second Amendment include 18-to-20-year-olds.  On this point, neither the Fifth Amendment nor the Fourteenth Amendment exclude— or have been interpreted to exclude—18-to-20-year-olds.  See, e.g., Fisher v. Univ. of Tex., 579 U.S. 365, 136 S. Ct. 2198, 2210 (2016) (equal protection); Goss v. Lopez, 419 U.S. 565, 574 (1975) (due process); Kent v. Dulles, 357 U.S. 57, 65-66 (1958) (travel); Brown v. Bd. of Educ., 347 U.S. 483, 493 (1954) (equal educational opportunities).  Likewise, regarding the Eighth Amendment, the Supreme Court has said that where "a line must be drawn," "[t]he

Brown v. ATF                                                    1:22cv80

### MEMORANDUM OPINION AND ORDER

age of 18 is the point where society draws the line for many purposes between childhood and adulthood." Roper v. Simmons, 543 U.S. 551, 574 (2005).  In short, neither the Second Amendment's text itself nor the ample Supreme Court precedent interpreting other constitutional provisions referring to "the people" support any conclusion other than the one made here.

The Court likewise considers the Fourth Circuit's guidance[7] on this question.

> First, nothing in the text of the Second Amendment limits its application by age. Second, the most analogous rights to the Second Amendment, those in the First and Fourth Amendments, similarly contain no age limits.  Third, most other constitutional

---

[7] Of course, this Court is bound to faithfully apply Fourth Circuit precedent when applicable. See Rettig v. All. Coal, LLC, No. 2:21-CV-08, 2023 WL 5673961, at *3 (N.D.W. Va. Sept. 1, 2023) (citing United States v. Brown, 74 F. Supp. 2d 648, 652 (N.D.W. Va. 1998) ("[A] district court is bound by the precedent set by its Circuit Court of Appeals, until such precedent is overruled by the appellate court or the United States Supreme Court.")).  The Hirshfeld opinion, having been vacated, is no longer binding precedent but remains instructive. See Maryland Shall Issue, Inc., 2023 WL 8043827, at *8 (relying on Hirshfeld to summarize Founding Era militia laws).

Notably, since Hirshfeld, the Fourth Circuit marked the significance of the "the people" prong of Bruen's analysis. Leaving the specific contours of that definition to another day because the parties had stipulated to it, the Maryland Shall Issue, Inc. court observed "[t]his is not necessarily to say that 'the people' is limited to 'ordinary, law-abiding, adult citizens.' Post-Bruen, several courts have held that 'the people' refers to all Americans, and is not limited to ordinary, law-abiding adult citizens." Maryland Shall Issue, Inc., 2023 WL 8043827, at *4 n.5 (citing as an example United States v. Silvers, No. 5:18-cr-50-BJB, 2023 WL 3232605, at *5-6 (W.D. Ky. May 3, 2023)).

Brown v. ATF                                                   1:22cv80

### MEMORANDUM OPINION AND ORDER

> rights are not age limited. And fourth, the
> few rights that may not apply to those under
> 18 or that change by age are not analogous to
> the Second Amendment, and most of those rights
> become applicable at age 18, not 21.

Hirschfeld, 5 F.4th at 421, vacated by 14 F.4th 322 (4th Cir.
2021). Indeed, the Fourth Circuit found the statutorily prohibited
age group of 18-to-20-year-olds are part of "the people" included
in the Second Amendment's protection. Id. The Fourth Circuit
reasoned "[t]he Second Amendment refers to the 'right of the
people,' which is a phrase also used in the First and Fourth
Amendments to denote an individual right," neither of which
delineate age groups and instead "codify a pre-existing,
fundamental, inalienable individual right." Id. at 422 (citing
Heller, 554 U.S. at 579, 592). Of course, "'minors' First
Amendment rights are qualified to some degree, see Tinker, 393
U.S. at 506, 513, 89 S.Ct. 733, but those qualifiers do not
eliminate the rights altogether." Id. From this, the Fourth
Circuit "emphasize[d] that the First and Fourth Amendments'
protection of 'the people,' including those under 18, confirms
that 'the people' protected by the Second Amendment includes at
least those 18 and older." Id. "Indeed, it would be odd to treat
the Second Amendment like marriage and sex rather than
contemporaneously ratified rights such as the First and Fourth
Amendments that have been described as fundamental pre-existing

Brown v. ATF                                                          1:22cv80

MEMORANDUM OPINION AND ORDER

rights analogous to the Second Amendment." Id. at 423. "[I]t is hard to conclude that 18- to 20-year-olds have no Second Amendment rights when almost every other constitutional right affords them protection." Id. at 424.

Considering this analysis, the Court concludes 18-to-20-year-old law abiding citizens are part of "the people" who the Second Amendment protects. Plaintiffs themselves and the activity which federal law and regulation currently prevent them from undertaking are covered under the Second Amendment's umbrella of constitutional freedoms. Thus, the burden shifts to Defendants who must demonstrate the challenged statutes are constitutionally permissible under Bruen. See Maryland Shall Issue, Inc., 2023 WL 8043827, at *6 ("At Bruen's second step, [the Government] must provide historical evidence that justifies its law.").

**3. The Government cannot meet its burden to show 18 U.S.C. §§ 922(b)(1) or 922(c)(1) are consistent with our Nation's historical tradition of firearm regulation.**

If the normal and ordinary meaning of the Second Amendment's text protects the individual's proposed course of conduct, which the Court finds to be the case here, then the Amendment "presumptively guarantees" the individual's right related to firearms, and the burden falls on the Government to justify the challenged regulation. Bruen, 142 S. Ct. at 2135. The Government bears the burden to show that the law is "consistent with this

32

JA060

Brown v. ATF                                                      1:22cv80

<u>MEMORANDUM OPINION AND ORDER</u>

Nation's historical tradition of firearm regulation." <u>Id</u>. at 2126-
27, 2135; <u>Heller</u>, 544 U.S. at 580.   "To do this, it may identify
a 'historical analogue' demonstrating that its law falls within a
historically recognized exception to the right to keep and bear
arms." <u>Maryland Shall Issue, Inc.</u>, 2023 WL 8043827, at *6 (citing
Bruen, 142 S. Ct. at 2132-33).

     This necessarily requires the "reasoning by analogy"
contemplated by the <u>Bruen</u> Court.  <u>Bruen</u>, 142 S. Ct. at 2132.  The
Government must identify historical firearm regulations that are
consistent with the modern, challenged regulation, and courts must
decide whether a "historical regulation is a proper analogue"
through "a determination of whether the two regulations are
"'relevantly similar.'"  <u>Id</u>. (quoting C. Sunstein, On Analogical
Reasoning, 106 Harv. L. Rev. 741, 774 (1993)).  Courts applying
<u>Bruen</u> must consider "whether modern and historical regulations
impose a comparable burden on the right of armed self-defense and
whether that burden is comparably justified."  <u>Id</u>. at 2133.
However, the Court has cautioned that "[t]his does not mean that
courts may engage in independent means-end scrutiny under the guise
of analogical reasoning."  <u>Id</u>. at 2133 n.7.

     In the Defendants' attempt to "justify [the Government's]
regulation by demonstrating that it is consistent with the Nation's
historical tradition of firearm regulation," they cite to William

Brown v. ATF                                           1:22cv80

### MEMORANDUM OPINION AND ORDER

Blackstone commentaries and other "longstanding" state laws
prohibiting sales of firearms to persons under 21. ECF No. 24 at
14. Notably, Defendants argue that, historically, a person's age
of 21 is the age of majority. Id.; see also ECF No. 24-2, Ex. B.
Our Nation's history, however, points to a different conclusion.

Defendants spend time collecting state laws proscribing age
barriers to the possession and purchase of firearms between the
years of 1856 and 1993. ECF No. 24-2, Ex. B. However,
"[c]onstitutional rights are enshrined with the scope they were
understood to have when the people adopted them, whether or not
future legislatures or (yes) even future judges think that scope
too broad." Heller, 544 U.S. at 634-35; see also Bruen, 142 S.
Ct. at 2137 ("the scope of the protection applicable to the Federal
Government . . . is pegged to the public understanding of the right
when the Bill of Rights was adopted in 1791."). Defendants'
reliance on mostly 19th century gun safety regulations as their
justification in regulating the 18-to-20-year-old age group is
misplaced under Heller and Bruen.[8]    When later evidence

---

[8] Plaintiffs here challenge the constitutionality of federal
statutes and regulations. While some Courts have been faced with
the question of which date – the Bill of Rights including the
Second Amendment was ratified in 1791 and the Fourteenth Amendment
was ratified in 1868 - should be more relevant considering the
Fourteenth Amendment's extension of the Second Amendment to the
states, see, e.g., Worth, 2023 WL 2745673, at *10, that quandary
is not presented in this case.

Brown v. ATF                                                    1:22cv80

### MEMORANDUM OPINION AND ORDER

"contradicts earlier evidence," it "cannot provide much insight into the meaning of the Second Amendment." Bruen, 142 S.Ct. at 2154.

At the time of the ratification of the Second Amendment in 1791, eighteen (18) was the age of majority for militia service throughout the nation. Although, in 1775, sixteen-year-olds were expected to fight in the Revolutionary War. United States v. Blakeney, 3 Gratt. 405, 441 (Va. 1847) ("During the war of the revolution, sixteen was the military age.").

In 1792, the United States Congress "specified that 'each and every free able-bodied white male citizen of the respective states, resident therein, who is or shall be of the age of eighteen years, and under the age of forty-five years (except as is herein after excepted) shall severally and respectively be enrolled in the militia.'" Heller, 544 U.S. at 596 (quoting Second Militia Act of 1792 § 1, 1 Stat. 271). Indeed,

> [t]he Militia Act further required every member of the militia to "provide himself with a good musket or firelock . . . or with a good rifle." Id. Over the next few years, every state revised its existing militia laws to conform with the federal statute. In each of these state statutes, the states adopted a militia age of 18 and required militiamen to arm themselves.

Fraser, 2023 WL 3355339, at *17 (quoting Second Militia Act of 1792 § 1) (collecting laws of states and commonwealths implementing

Brown v. ATF                                              1:22cv80

MEMORANDUM OPINION AND ORDER

militia majority age of 18 between the years of 1792 and 1807);
see also United States v. Miller, 307 U.S. 174, 179 (1939) ("And
further, that ordinarily when called for service these men were
expected to appear bearing arms supplied by themselves and of the
kind in common use at the time."). "[B]y the eve of the Civil
War, only three states had passed any form of restrictions on the
ability of minors to purchase firearms and each of these was passed
65 years or more after the ratification of the Second Amendment."
Fraser, 2023 WL 3355339, at *21; see also McCraw, 623 F. Supp.3d
at 750 (citing Nat'l Rifle Ass'n v. Bureau of Alcohol, Tobacco,
Firearms & Explosives, 714 F.3d 334 (5th Cir. 2013) (Jones, J.,
dissenting)) ("Likewise, at the time of the founding, most states
had similar laws requiring militia service for 18-to-20-year-
olds."). Thus, the historical data close in time to ratification
in 1791 confirms 18-to-20-year-olds have the right to keep and
bear arms and are protected as part of "the people" under the
Second Amendment.

Following briefing, the Government filed a Notice of
Supplemental Authority [ECF No. 37] on March 9, 2023, alerting the
Court to the Eleventh Circuit's decision issued that same day in
National Rifle Association v. Bondi, 61 F.4th 1317 (11th Cir.
2023). There, the Eleventh Circuit found a Florida statute
limiting the ability of 18-to-20-year-olds to purchase firearms

Brown v. ATF                                              1:22cv80

### MEMORANDUM OPINION AND ORDER

did not violate the Second Amendment.  See id. at 1332.  The Bondi court focused on whether the ratification era of the Second or Fourteenth Amendment primarily informed its assessment of the historical tradition of American firearm regulation.  See id. at 1321-1332.  As discussed supra at n.6, that assessment is much less relevant here given Plaintiffs' challenge to a federal statute.[9]

Regardless, the Bondi decision was **vacated** on July 14, 2023, when the Eleventh Circuit granted a petition for rehearing and decided to rehear the case en banc.  72 F.4th 1346 (Mem.) (11th Cir. 2023).  Thus, the authority to which Defendants point the Court is no longer "authority."  To date, Defendants have inexplicably failed to update or withdraw their Notice of Supplemental Authority despite the fact that the Eleventh Circuit opinion—published over fourth months ago—vacates the Bondi panel's opinion **and** dedicates significant time in their papers discounting the Fourth Circuit's Hirschfeld opinion for the same reason.

---

[9] The Bondi court undertook an extensive and thorough analysis compiling historical analogues relevant to its inquiry of the historical understanding at the time the Fourteenth Amendment was ratified during Reconstruction (1866).  This Court finds further support for its conclusion that the Founding Era analogues weigh in favor of Plaintiffs' position here as the Bondi opinion's appendix tracks state laws regulating firearm purchases by 18-to-20-year-olds spanning origins from 1855 into 1897 – well after the Second Amendment's ratification date in 1791.  See id. at 1333-38.

Brown v. ATF                                                    1:22cv80

### MEMORANDUM OPINION AND ORDER

The core issue the Court must answer under <u>Bruen</u> remains whether our Nation's history and tradition contains "analogous" restrictions on the ability of 18-to-20-year-olds to purchase firearms. <u>Bruen</u>, 145 S. Ct. at 2133. Defendants have not presented any evidence of age-based restrictions on the purchase or sale of firearms from before or at the Founding or during the Early Republic. Defendants have likewise failed to offer evidence of similar regulation between then and 1791 or in a relevant timeframe thereafter. For that reason alone, Defendants have failed to meet the burden imposed by <u>Bruen</u>. The Court once again finds Judge Payne's reasoning highly persuasive.

> Finally, the lack of analogous evidence of Founding-era regulations demonstrates that the statutes and regulations at issue are inconsistent with the Second Amendment. Since time immemorial, teenagers have been, well, teenagers. The "general societal problem" of teenage impetuousness and rashness far proceeded the Founding. <u>Bruen</u>, 142 S.Ct. at 2131. Yet, that fact notwithstanding, the Government has not demonstrated that the Founders dealt with this problem in a "distinctly similar" way to the statutes and regulations at issue. <u>Id</u>. The lack of analogous regulations permits a finding that the Founders considered age-based regulations on the purchase of firearms to circumscribe the right to keep and bear arms confirmed by the Second Amendment.

<u>Fraser</u>, 2023 WL 3355339, at *21. More succinctly stated, "[w]hile some gun regulations existed at the Founding, there were no regulations restricting minors' ability to possess or purchase

Brown v. ATF                                               1:22cv80

### MEMORANDUM OPINION AND ORDER

weapons until two states adopted such laws in 1856." <u>Hirschfeld</u>,

5 F.4th at 437.[10]

In summary, because Plaintiffs' conduct – the purchase of

handguns – "fall[s] [within] the Second Amendment's 'unqualified

command'" and the challenged statutes and regulations are not

"consistent with the Nation's historic tradition of firearm

regulation," the Court **FINDS** 18 U.S.C. §§ 922(b)(1) and (c)(1)

facially unconstitutional and as applied to Plaintiffs. Plaintiffs

having demonstrated there is no genuine dispute of material fact

and that they are entitled to judgment as a matter of law, their

Motion for Summary Judgment [ECF No. 28] is **GRANTED**. For the same

reasons,[11] Defendants' Motion to Dismiss [ECF No. 24] is **DENIED**.

### V.   <u>CONCLUSION</u>

For the reasons discussed, the Court **DENIES** Defendant's

Motion to Dismiss [ECF No. 23] and **GRANTS** Plaintiffs' Motion for

Summary Judgment [ECF No. 28]. Defendants are **ENJOINED** from

---

[10] Again, although <u>Hirschfeld</u> itself was vacated, the historical
analysis and summary detailed in that opinion remains accurate.
<u>See Maryland Shall Issue, Inc.</u>, 2023 WL 8043827, at *8 (relying on
<u>Hirschfeld</u> for historical perspective). Thus, like Judge Jones'
dissent in <u>NRA II</u>, the Court considers it both instructive and
highly persuasive.
[11] Rule 12 and Rule 56 obviously require the Court to employ
different standards; however, for the same reasons the Court grants
their summary judgment motion, Plaintiffs have obviously stated a
plausible claim for relief in their Amended Complaint. <u>See Salazar
v. Holder</u>, No. 3:14-CV-23, 2015 WL 574800, at *3 (N.D.W. Va.
February 11, 2015) (Groh, J.) (outlining Rule 12(b)(6) standard).

Brown v. ATF                                             1:22cv80

**MEMORANDUM OPINION AND ORDER**

enforcing 18 U.S.C. §§ 922(b)(1) and (c)(1) against Plaintiffs and
otherwise-qualified 18-to-20-year-olds.

Pursuant to Federal Rule of Civil Procedure 54(b) and finding
no just reason for a delay of the appeal of this Order, the Court
**DIRECTS** entry of a final judgment in favor of Plaintiffs, and to
**STRIKE** this case from the Court's active docket.

It is so **ORDERED**.

Pursuant to Rule 54(b), the Court **DIRECTS** the Clerk to enter
a separate judgment order. It further **DIRECTS** the Clerk to transmit
copies of this Memorandum Opinion and Order and the judgment order
to counsel of record.

**DATED:** December 1, 2023

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA

JA068

# UNITED STATES DISTRICT COURT

for the

## Northern District of West Virginia

Steven Robert Brown, et al

*Plaintiff(s)*

v.

Bureau of Alcohol, Tobacco and Firearms, et al

*Defendant(s)*

Civil Action No.   1:22-cv-80

## JUDGMENT IN A CIVIL ACTION

The court has ordered that:

☐ Judgment award     ☐ Judgment costs     ☒ Other

other:   The Court DENIES Defendant's Motion to Dismiss and GRANTS Plaintiffs' Motion for Summary Judgment. The Court DIRECTS entry of a final judgment in favor of Plaintiffs.

This action was:

☐ tried by jury     ☐ tried by judge     ☒ decided  by judge

decided by Judge   Thomas S. Kleeh

Date:    December 1, 2023

CLERK OF COURT
Cheryl Dean Riley
S. Cole

*Signature of Clerk or Deputy Clerk*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

STEVEN ROBERT BROWN,
BENJAMIN WEEKLEY,
SECOND AMENDMENT FOUNDATION, and
WEST VIRGINIA CITIZENS DEFENSE
LEAGUE,

      Plaintiffs,

    v.                            CIVIL ACTION NO. 1:22-CV-80
                                      (Chief Judge Kleeh)

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES,
MERRICK GARLAND, U.S. Attorney General,
in his official capacity, and
STEVEN DETTELBACH, Director
of the ATF, in his official capacity,

      Defendants.

## ORDER ENTERING STAY PENDING APPEAL AND CLARIFYING SCOPE OF INJUNCTION [ECF NO. 42]

Pending before the Court is *Defendants' Motion for a Stay Pending Appeal and Motion to Clarify* [ECF No. 42], which was filed on December 4, 2023. Plaintiffs subsequently responded on December 5, 2023, by filing *Plaintiffs' Opposition to Defendants' Motion for Stay of Injunction and Motion to Clarify* [ECF No. 43]. Defendants filed a reply in support of their motion on December 6, 2023 [ECF No. 44]. For the following reasons, Defendants' Motion is **GRANTED**. The Court further **AMENDS** its memorandum opinion and order to clarify the scope of the subject injunction [ECF No. 40].

Brown v. ATF                                                   1:22cv80

### ORDER ENTERING STAY PENDING APPEAL AND CLARIFYING SCOPE OF INJUNCTION [ECF NO. 42]

### I.   DISCUSSION

### A. Plaintiff's Motion to Stay Pending Appeal is Granted.

The relevant factors favor staying this Court's judgment pending appeal. Fed. R. Civ. P. 62(c) allows courts to stay injunctions pending appeals. As the Supreme Court of the United States explained, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936).

"'A stay is not a matter of right, even if irreparable injury might otherwise result.' . . . It is instead 'an exercise of judicial discretion,' and '[t]he propriety of its issue is dependent upon the circumstances of the particular case.'" Redman v. Javitch Block, LLC, No. 3:21-CV-37, 2021 WL 7448734, at *1 (N.D.W. Va. Nov. 2, 2021) (quoting Virginian Ry. Co. v. United States, 272 U.S. 658, 672-73(1926)). The Court weighs four factors when determining if a stay is appropriate: (1) whether the party against whom the injunction was granted made a strong showing of a likelihood of success on the merits; (2) whether the party against whom the injunction was granted will be irreparably injured absent a stay; (3) whether a stay will substantially injure the other parties' interests; and (4) where the public interest lies.

2

JA071

Brown v. ATF                                                    1:22cv80

**ORDER ENTERING STAY PENDING APPEAL AND CLARIFYING SCOPE OF
INJUNCTION [ECF NO. 42]**

Hilton v. Braunskill, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d
724 (1987). "The court's assessment must focus on the circumstances
of each case and 'cannot be reduced to a set of rigid rules.'"
Worth v. Jacobson, No. 21-CV-1348, 2023 WL 3052730, at *1-2 (D.
Minn. Apr. 24, 2023) (quoting Hilton, 481 U.S. at 777).

### 1. Likely to Succeed on the Merits

Regarding the first factor, Defendants argue they have a
strong likelihood of success on the merits on appeal, noting that
other courts have reached opposite conclusions in similar cases.
ECF No. 42. Plaintiffs disagree and assert that their success on
appeal is a foregone conclusion following the Supreme Court's
decision in New York State Rifle & Pistol Association, Inc. v.
Bruen, 142 S.Ct. 2111 (2022). ECF No. 43.

The first factor "does not require the trial court to change
its mind or conclude that its determination on the merits was
erroneous." Fraser v. Alcohol, No. 3:22-CV-410, 2023 WL 5617894,
at *3 (E.D. Va. Aug. 30, 2023) (quoting United States v. Fourteen
Various Firearms, 897 F.Supp. 271, 273 (E.D.Va. 1995)). Rather,
the question is "whether '[r]easonable minds' could disagree on
the correct outcome of the case. Id. (citing Worth, 2023 WL 3052730
at *2). "Many courts also take into account that the case raises
substantial difficult or novel legal issues meriting a stay." 11

Brown v. ATF                                          1:22cv80

### ORDER ENTERING STAY PENDING APPEAL AND CLARIFYING SCOPE OF INJUNCTION [ECF NO. 42]

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2904 (3d ed.) (April 2023).

While the Court stands behind its reasoning and determination in its Memorandum Opinion and Order [ECF No. 40], the Court finds that the first factor weighs in favor of staying the injunction. Several federal district courts have evaluated the constitutionality of 922(b)(1)'s age ban with differing results.[1] This lawsuit poses the substantial and novel question "of the proper definition of 'the people' in the Second Amendment and whether 18-to-21-year-olds fall within in it. In well-reasoned and thoughtful opinions, district courts have landed on both sides of that debate." Fraser, 2023 WL 5617894 at *3. Because Courts are split in their assessment of this question, reasonable minds can and have varied. Accordingly, the first factor weighs in favor of staying the injunction pending appeal to the United States Court of Appeals for the Fourth Circuit.

### 2. Irreparable Harm to Defendants

As to the second factor, Defendants argue four ways in which they will be irreparably injured but for entry of the stay: (1) the injunction prevents the government from enforcing its laws;

---

[1] See e.g., McCoy v. ATF, No. 23-2085 (4th Cir.); Reese v. ATF, No. 23-30033 (5th Cir.); Fraser v. Bureau of Alcohol, Tobacco, Firearms & Explosives, No. 3:22-CV-410, 2023 WL 5617899 (E.D. Va. Aug. 30, 2023); Worth v. Harrington, No. 21-cv-1348, slip op. (D. Minn. Apr. 24, 2023); Firearms Policy Coalition v. McCraw, 623 F. Supp. 3d 740, 757 (N.D. Tex. 2022).

4

JA073

Brown v. ATF                                                    1:22cv80

### ORDER ENTERING STAY PENDING APPEAL AND CLARIFYING SCOPE OF INJUNCTION [ECF NO. 42]

(2) Defendants will suffer harm to public safety; (3) any handgun sales to individuals between 18 and 21 years old cannot be undone if the statute is later found constitutional on appeal; and (4) the Government will be placed in a difficult position changing its federal firearm licensees ("FLL") guidance multiple times. ECF No. 42. Plaintiffs counter that Defendants will not be injured if the injunction remains in effect because §§ 922(b)(1) and (c)(1) are unconstitutional. ECF No. 43.

   "An unconstitutional act is not a law; it confers no rights; it imposes no duties . . . it is, in legal contemplation, as inoperative as though it had never been passed." Norton v. Shelby Cnty., Tenn., 118 U.S. 425, 442 (1886). Furthermore, "the Fourth Circuit has found that the Government 'is in no way harmed by issuance of an injunction that prevents the state from enforcing unconstitutional restrictions.'" Fraser v. Bureau of Alcohol, Tobacco, Firearms & Explosives, No. 3:22-CV-410, 2023 WL 5617899 (E.D. Va. Aug. 30, 2023), at *6 (quoting Legend Night Club v. Miller, 637 F.3d 291, 302-03 (4th Cir. 2011)). Defendants cannot show irreparable harm by losing the right to enforce an unconstitutional law. The Court further is not persuaded by Defendants' public safety argument as federal law does not prohibit 18-to-20-year-olds from *possessing* handguns or from engaging in private sales of handguns. Thus, removing the unconstitutional

5

Brown v. ATF                                                    1:22cv80

### ORDER ENTERING STAY PENDING APPEAL AND CLARIFYING SCOPE OF INJUNCTION [ECF NO. 42]

barrier of purchasing handguns by law-abiding 18-to-20-year-olds does not greatly impact the public safety.

The Court is persuaded however that requiring the Government to change its guidance to the FLL multiple times could irreparably harm Defendants and hinder their ability to engage in law enforcement.

> The Government furthermore would be placed in a difficult position of changing and then re-changing its guidance to FFLs and its processes, procedures, and forms, causing significant confusion for law enforcement officers, retailers, and citizens. This confusion could hamper the Government's ability to effectively engage in law enforcement, thus jeopardizing public safety interests.

Fraser, 2023 WL 5617894 at *4. Thus, this factor supports granting the stay.

### 3. Substantial Harm to Plaintiffs and the Public Interest

Third and fourth, Defendants argue that Plaintiffs are not substantially harmed by staying the injunction because they would still be able to purchase handguns when they turned 21 years old, or the appeal concluded. ECF No. 42. The Government contends that a law-abiding 18-to-20-year-old who wishes to purchase a handgun without their parents' permission "fall[s] within the category of individuals Congress identified as posing a threat to public safety." Id. Plaintiffs argue that the injunction cannot be stayed

Brown v. ATF                                                    1:22cv80

### ORDER ENTERING STAY PENDING APPEAL AND CLARIFYING SCOPE OF INJUNCTION [ECF NO. 42]

because the violation of their constitutional right to bear arms is an irreparable injury. ECF No. 43. Furthermore, the alternatives to purchasing new handguns available to Plaintiffs—highlighted by Defendants—weakens any argument as to a public safety threat. Id.

Plaintiffs will clearly be substantially injured if the injunction is stayed because "upholding constitutional rights is in the public interest." Legend Night Club, 637 F.3d 291 (citing Giovani Carandola, Ltd. v. Bason, 303 F.3d 507 (4th Cir. 2002)). "Plaintiffs certainly have a strong interest in exercising their constitutional rights and the stay will delay the date on which they may do so." Fraser, 2023 WL 5617894, at *4.

While these factors weigh in favor of the injunction, they do not outweigh the other factors supporting the stay. "Plaintiffs have an interest in exercising their constitutional rights. As this Court has interpreted this rapidly developing and uncertain area of the law, entering the stay . . . will affect the Plaintiffs' ability to exercise their rights under the Second Amendment. But this factor does not outweigh all the others." Worth, 2023 WL 3052730, at *4. "Though Plaintiffs' interest in the vindication of their Constitutional rights suffers while the judgment is stayed, the stay is necessary to militate the possible negative effects of relying on the injunction while it is subject to appellate review and possible reversal." Firearms Pol'y Coal., Inc. v. McCraw, 623

7

JA076

Brown v. ATF                                              1:22cv80

### ORDER ENTERING STAY PENDING APPEAL AND CLARIFYING SCOPE OF INJUNCTION [ECF NO. 42]

F. Supp. 3d 740, 757 (N.D. Tex. 2022), <u>appeal dismissed sub nom.</u> <u>Andrews v. McCraw</u>, No. 22-10898, 2022 WL 19730492 (5th Cir. Dec. 21, 2022).

    For these reasons and in balancing the above factors, a stay of the Court's Memorandum Order and Opinion [ECF No. 40] pending appeal is appropriate. Thus, *Defendants' Motion for a Stay of Injunction Pending Appeal and Motion to Clarify* **is GRANTED**, as to Defendants' request to stay the injunction.

**B.  The Court Clarifies the Scope of the Injunction as Follows.**

    Even though the Court is staying the injunction, Defendants and Plaintiffs both request the Court clarify the scope of the injunction imposed in the Memorandum Opinion and Order [ECF No. 40]—albeit with varying recommended interpretations. ECF Nos. 42,43. To be clear, the Court's Memorandum Opinion and Order prohibited enforcement of 18 U.S.C. §§ 922(b)(1) and (c)(1) against "Plaintiffs and otherwise-qualified 18-to-20-year-olds"—i.e., members of the institutional Plaintiff between eighteen and twenty years old. ECF No. 40. If/when the stay is lifted, the subject injunction is **not** a nationwide injunction. Nor does the Court contend that it would have such authority to impose such a universal injunction.

    "'[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief *to the*

Brown v. ATF                                                          1:22cv80

### ORDER ENTERING STAY PENDING APPEAL AND CLARIFYING SCOPE OF INJUNCTION [ECF NO. 42]

*plaintiffs*' in the case." <u>Trump v. Int'l Refugee Assistance Project</u>, 582 U.S. 571, 585, 137 S. Ct. 2080, 2090, 198 L. Ed. 2d 643 (2017) (GORSUCH, J. concurring) (emphasis in original) (internal quotation omitted). "Nationwide injunctions are plainly inconsistent with this conception of the judicial role and the proper scope of the federal courts' remedial power. A nationwide injunction, by its nature, extends relief far beyond the parties to an individual case." <u>CASA de Maryland, Inc. v. Trump</u>, 971 F.3d 220, 257 (4th Cir. 2020), <u>vacated for reh'g en banc</u>, 981 F.3d 311 (4th Cir. 2020) (dismissed Mar. 11, 2021). As such, "all injunctions—even ones involving national policies—must be 'narrowly tailored to remedy the specific harm shown'." <u>E. Bay Sanctuary Covenant v. Barr</u>, 934 F.3d 1026, 1029 (9th Cir. 2019) (internal quotations omitted).

"The Supreme Court has repeatedly emphasized that nationwide injunctions have detrimental consequences to the development of law and deprive appellate courts of a wider range of perspectives." <u>California v. Azar</u>, 911 F.3d 558, 582–83 (9th Cir. 2018).

> By design, the federal court system allows courts to reach multiple answers to the same legal question, but nationwide injunctions frustrate that end. There are 94 federal district courts around the country and 12 regional circuit courts of appeals. The decision of any one of those courts typically has little effect on the other courts of its type: one circuit's decisions are not binding

9

Brown v. ATF                                                    1:22cv80

### ORDER ENTERING STAY PENDING APPEAL AND CLARIFYING SCOPE OF INJUNCTION [ECF NO. 42]

> on the others, and a district court's
> decisions do not bind other district courts,
> other judges on the same court, or even the
> same judge in another case.

Georgia v. President of the United States, 46 F.4th 1283, 1304 (11th Cir. 2022). Accordingly, it is "preferable to allow several courts to pass on a given [issue] in order to gain the benefit of adjudication by different courts in different factual contexts." Califano v. Yamasaki, 442 U.S. 682, 702, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). See New York v. United States Department of Homeland Security, 969 F.3d 42, 88 (2nd Cir. 2020) ("It is not clear to us that, where contrary views could be or have been taken by courts of parallel or superior authority, entitled to determine the law within their own geographical jurisdictions, the court that imposes the most sweeping injunction should control the nationwide legal landscape.").

With this in mind, the Court's Opinion and Order does not strip away the authority of other courts to consider the constitutionality of enforcing 18 U.S.C. §§ 922(b)(1) and (c)(1). This issue has been raised in other courts,[2] and the continued reasoning and evaluation of different factual contexts will

---

[2] See e.g., McCoy v. ATF, No. 23-2085 (4th Cir.); Reese v. ATF, No. 23-30033 (5th Cir.); Fraser v. Bureau of Alcohol, Tobacco, Firearms & Explosives, No. 3:22-CV-410, 2023 WL 5617899 (E.D. Va. Aug. 30, 2023); Worth v. Harrington, No. 21-cv-1348, slip op. (D. Minn. Apr. 24, 2023); Firearms Policy Coalition v. McCraw, 623 F. Supp. 3d 740, 757 (N.D. Tex. 2022).

Brown v. ATF                                                  1:22cv80

### ORDER ENTERING STAY PENDING APPEAL AND CLARIFYING SCOPE OF INJUNCTION [ECF NO. 42]

ultimately aid in future appellate court decisions. The injunction here, though stayed, only protects the constitutional rights of the named individual Plaintiffs and institutional Plaintiff West Virginia Citizens Defense League and its members.

The Court declines to adopt Defendants' proposed clarified scope. ECF No. 42-1. The Court need not clarify that the injunction does not apply to sale of handguns to persons prohibited from possessing a firearm under 18 U.S.C. § 922(g) or any other provision of federal law because only §§ 922(b)(l) and (c)(1) are challenged in this suit. Thus, the Court's Memorandum Order and Opinion only addresses the unconstitutionality of preventing the sale of handguns to "Plaintiffs and otherwise-qualified 18-to-20-year-olds." The term "otherwise-qualified" already provides the necessary scope Defendants request.

To provide clarity, if the stay is lifting following appeal, Defendants, their officers, agents, servants, employees, all persons in active concert or participation with them, and all who have notice of the injunction, would be enjoined from enforcing 18 U.S.C. §§ 922(b)(l) and (c)(1) and their derivative regulations, against federal firearms licensees. Again, the injunction would only apply as to the named individual Plaintiffs and institutional Plaintiff West Virginia Citizens Defense League and its members.

11

JA080

Brown v. ATF                                                      1:22cv80

### ORDER ENTERING STAY PENDING APPEAL AND CLARIFYING SCOPE OF INJUNCTION [ECF NO. 42]

### II.  CONCLUSION

For the foregoing reasons, *Defendants' Motion for a Stay of Injunction Pending Appeal and Motion to Clarify* [ECF No. 42] is **GRANTED**, and the injunction is **STAYED** pending appeal.

It is further **ORDERED** that the Court's judgment, ECF Nos. 40-41, is **amended** to clarify that, Defendants, their officers, agents, servants, employees, all persons in active concert or participation with them, and all who have notice of the injunction, are **ENJOINED** from enforcing 18 U.S.C. §§ 922(b)(1) and (c)(1) and their derivative regulations, against federal firearms licensees. The Court's judgment is further **amended** to clarify that the injunction applies as to the named individual Plaintiffs and institutional Plaintiff West Virginia Citizens Defense League and its members. The judgement does not apply to the named plaintiffs in <u>McCoy v. ATF</u>, No. 23-2085 (4th Cir.), and <u>Reese v. ATF</u>, No. 23-30033 (5th Cir.). Defendants' request for an immediate administrative stay is **DENIED AS MOOT** [ECF No. 42].

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to transmit copies of this Order to counsel of record.

12

JA081

**Brown v. ATF**                                                    **1:22cv80**

**ORDER ENTERING STAY PENDING APPEAL AND CLARIFYING SCOPE OF
INJUNCTION [ECF NO. 42]**

   **DATED:** December 7, 2023

_Tom S Kleeh_
_____
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA

13

JA082

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION

| | | |
|---|---|---|
| STEVEN BROWN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:22-cv-00080 |
| | ) | |
| THE BUREAU OF ALCOHOL, TOBACCO, | ) | |
| FIREARMS, AND EXPLOSIVES, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

## <u>NOTICE OF APPEAL</u>

Notice is hereby given that Defendants Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF); Steven Dettelbach, in his official capacity as Acting Director of ATF; and Merrick Garland, in his official capacity as Attorney General of the United States, appeal to the U.S. Court of Appeals for the Fourth Circuit from this Court's Judgment (Docket No. 41), as amended (Docket No. 45), and from all orders and opinions merged into the judgment, including but not limited to Docket No. 40.

Dated:  December 8, 2023

Respectfully submitted,

WILLIAM IHLENFELD
UNITED STATES ATTORNEY

By:     /s/ Maximillian F. Nogay
Maximillian F. Nogay
W. Va. Bar # 13445
United States Attorney's Office

1

P.O. Box. 591
1125 Chapline Street, Suite 3000
Wheeling, WV 26003
(304) 234-0100 (office)
(304) 234-0110 (facsimile)
Max.Nogay@usdoj.gov


BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Branch Director

MICHAEL P. CLENDENEN
(D.C. Bar No. 1660091)
Trial Attorney
DANIEL RIESS
Senior Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 305-0693
Fax: (202) 616-8460
michael.p.clendenen@usdoj.gov

*Attorneys for Defendants*

2

JA084

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2024, I electronically filed the foregoing appendix with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.  Service will be accomplished by the appellate CM/ECF system.

*s/ Steven H. Hazel*
Steven H. Hazel