No. 23-2275

In the

# United States Court of Appeals
# For the Fourth Circuit

**STEVEN ROBERT BROWN, et al.,**

*Plaintiffs-Appellees,*

**v.**

**BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, et al.,**

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Northern District of West Virginia
No. 1:22-cv-00080-TSK

## AMICUS BRIEF OF
## THE NATIONAL SHOOTING SPORTS FOUNDATION, INC.
## IN SUPPORT OF PLAINTIFFS-APPELLEES AND
## AFFIRMANCE OF THE DISTRICT COURT

Michael L. Rice
Harrison Law LLC
141 W. Jackson Blvd., Suite 2055
Chicago, IL 60604
Telephone: (213) 638-8781
mikerice@hlawllc.com

*Counsel for Amicus*
*National Shooting Sports Foundation, Inc.*

# TABLE OF CONTENTS

STATEMENT OF INTEREST OF AMICUS CURIAE..............................................1

Facts Necessary to Argument of the Issues...................................................2

SUMMARY OF ARGUMENT.....................................................................4

ARGUMENT.........................................................................................5

    **I.**   THE SECOND AMENDMENT RIGHT OF LAW-ABIDING CITIZENS TO KEEP AND BEAR ARMS FOR SELF-DEFENSE INCLUDES THE RIGHT TO ACQUIRE THOSE ARMS AND AMMUNITION. ...................................................................6

    **II.**   YOUNG ADULTS AGED 18 TO 20 ARE WITHIN THE PROTECTION OF THE SECOND AMENDMENT..........................13

    **III.**  THE HANDGUN PURCHASE BAN'S PROHIBITION ON THE PURCHASE OF HANDGUNS AND HANDGUN AMMUNITION BY LAW-ABIDING YOUNG ADULTS CANNOT BE JUSTIFIED. .................................................16

Conclusion.........................................................................................21

Certificate of Compliance.......................................................................22

Certificate of Service.............................................................................23

# TABLE OF AUTHORITIES

## <u>Cases</u>

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ...................................... passim

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ............................................7

*Firearms Policy Coalition, Inc. v. McCraw*, 623 F. Supp. 3d 740
  (N.D. Tex.), *app. dism'd*, No. 22-10898, 2022 WL 19730492
  (5th Cir. Dec. 21, 2022) ........................................................................................15

*Fraser v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
  ___ F. Supp. 3d ___, No. 3:22-CV-410, 2023 WL 3355339
  (E.D. Va. May 10, 2023), *app. filed from subsequent judgment*,
  No. 23-2085 (4th Cir. Oct. 17, 2023) ........................................... 8, 12, 15, 18, 20

*Griswold v. Connecticut*, 381 U.S. 479 (1965)..........................................................9

*Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*,
  5 F.4th 407 (4th Cir.), *vacated as moot on other grounds*,
  14 F.4th 322 (4th Cir. 2021) ....................................................... 12, 13, 16, 19

*Ill. Ass'n of Firearms Retailers v. City of Chicago*,
  961 F. Supp. 2d 928 (N.D. Ill. 2014)...................................................................10

*Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953 (9th Cir. 2014)................8

*Lara v. Commissioner Pennyvania State Police*,
  91 F.4th 122 (3d Cir. 2024) ......................................................... 12, 13, 14, 18, 20

*Luis v. United States*, 578 U.S. 5 (2016)...................................................................9

*Malloy v. Hogan*, 378 U.S. 1 (1964).......................................................................17

*Maryland Shall Issue, Inc. v. Moore*, 86 F.4th 1038 (4th Cir. 2023),
  *reh'g en banc granted*, No. 21-2017 (L), 2024 WL 124290
  (4th Cir. Jan. 11, 2024) ..........................................................................................8

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) ..........................................7, 17

*Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012) ..................................................17

*National Rifle Association v. Bondi*, 61 F.4th 1317 (11th Cir.),
  *reh'g en banc granted, op. vacated*, 72 F.4th 1346 (11th Cir. 2023)....................18

*New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) ................. passim

*Renna v. Bonta*, 667 F. Supp. 3d 1048 (S.D. Cal.),
 *app. filed*, No. 23-55327 (9th Cir. Apr. 20, 2023)................................... 11, 12, 13

*Rocky Mountain Gun Owners v. Polis*, No. 23-CV-01077-PAB,
 2023 WL 5017253 (D. Colo. Aug. 7, 2023),
 *app. filed*, No. 23-1251 (10th Cir. Aug. 14, 2023) .........................................9, 19

*Teixeira v. County of Alameda*, 873 F.3d 670 (9th Cir. 2017) .................................8

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010).....................................12

*VanDerStok v. Garland*, 86 F.4th 179 (5th Cir. 2023), *pet. for cert. filed*, No.
 23852 (Feb. 7, 2024)......................................................................................3, 4

*Worth v. Harrington*, 666 F. Supp. 3d 902 (D. Minn.),
 *app. filed*, No. 23-2248 (8th Cir. 2023) ................................................ 15, 18, 19

## Statutes

18 U.S.C. § 922(a)(1).............................................................................................2

18 U.S.C. § 922(b)(1).............................................................................................3

18 U.S.C. § 922(c)(1).............................................................................................3

18 U.S.C. § 922(t) ................................................................................................10

18 U.S.C.A. § 923(a).............................................................................................2

Second Militia Act of May 8, 1792, ch. 33, §1, 1 Stat. 271 ............................ 14, 19

Omnibus Crime Control and Safe Streets Act of 1968,
 Pub. L. No. 90-351, 82 Stat. 197 .............................................................................3

## Regulations

27 C.F.R. § 478.41(a)............................................................................................2

27 C.F.R. § 478.96(b) ...........................................................................................3

27 C.F.R. § 478.99(b) ...........................................................................................3

27 C.F.R. § 478.124 ............................................................................................10

27 C.F.R. § 478.124(a)..........................................................................................3

27 C.F.R. § 478.124(f) ...........................................................................................3

## **Constitutional Provisions**

U.S. Const. art. I, § 2 ...........................................................................................15

U.S. Const. art. I, § 3 ...........................................................................................15

U.S. Const. art. II, § 1 .........................................................................................15

U.S. Const. amend. II ............................................................................................6

U.S. Const. amend. XXVI .....................................................................................15

## STATEMENT OF INTEREST OF AMICUS CURIAE[1]

*Amicus curiae*, the National Shooting Sports Foundation, Inc. ("NSSF"), is the trade association for the firearms, ammunition, hunting, and shooting sports industry.  Formed in 1961, NSSF is a Connecticut non-profit tax-exempt corporation serving its member firearm manufacturers, distributors, and retailers; sportsmen's organizations; public and private shooting ranges; gun clubs; and endemic media publishers.  NSSF's mission is to promote, protect and preserve hunting and shooting sports.  NSSF provides trusted leadership in addressing industry challenges; advances participation in and understanding of hunting and the shooting sports; reaffirms and strengthens its members' commitment to the safe and responsible use of their products; and promotes a political environment that is supportive of America's traditional hunting and shooting sports heritage and firearms freedoms.  NSSF believes that lawful commerce in firearms and firearms-related products is and must be protected to preserve the constitutional right guaranteed by the Second Amendment to purchase, own, possess, carry and lawfully use firearms.

NSSF's interest in this action derives principally from the fact that its

---

[1] Pursuant to Fed. R. App. P. 29(a)(2), Defendants-Appellants and Plaintiffs-Appellees have consented to the filing of an *amicus* brief by NSSF.  And pursuant to Fed. R. App. P. 29(a)(4)(E), *amicus* affirms that no counsel for a party wrote this brief in whole or in part, and no party, party's counsel or any person other than *amicus* made a monetary contribution intended to fund the brief's preparation or submission.

firearm manufacturer, distributor, and retailer members, including those affected by the federal Handgun Purchase Ban, provide for the lawful commerce in firearms that makes the exercise of Second Amendment rights possible. Plaintiffs-Appellees have ably demonstrated in their principal brief that the District Court's judgment in their favor is fully consistent with the analytical framework established by the United States Supreme Court. NSSF submits this brief to emphasize the importance of the right to acquire firearms to a full realization of the fundamental rights protected by the Second Amendment, an issue of particular importance to its members. NSSF also addresses the inclusion of 18-to-20-year-olds within the protection of the Second Amendment, and the lack of historical precedent justifying a complete prohibition on 18-to-20-year-olds lawfully acquiring handguns and handgun ammunition.

### Facts Necessary to Argument of the Issues

Federal law provides that "[n]o person shall engage in the business of importing, manufacturing, or dealing in firearms, or importing or manufacturing ammunition, until he has filed an application with and received a license to do so from the Attorney General." 18 U.S.C.A. § 923(a); *see also* 18 U.S.C. § 922(a)(1); 27 C.F.R. § 478.41(a) (importer, manufacturer or dealer in firearms "shall, before commencing such business, obtain the license required by this subpart for the business to be operated"). "The [Gun Control Act] requires all

manufacturers and dealers of firearms to have a federal firearms license; manufacturers and dealers are thus known as 'Federal Firearms Licensees' or 'FFLs.'" *VanDerStok v. Garland*, 86 F.4th 179, 183 (5th Cir. 2023), *pet. for cert. filed*, No. 23852 (Feb. 7, 2024).

Plaintiffs challenged the constitutionality of statutory provisions enacted as part of the Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, 82 Stat. 197, and the federal regulations adopted to carry out the provisions of that Act, which govern to whom FFLs may sell firearms and ammunition. As relevant to this appeal, the statutes and regulations make it unlawful for an FFL to sell "any firearm or ammunition … if the firearm, or ammunition is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age." 18 U.S.C. § 922(b)(1); *see also id*. § 922(c)(1) (prohibiting sales to anyone not appearing in person at the FFL's premises unless the person provides a sworn statement averring, among other things, that, "in the case of any firearm other than a shotgun or a rifle, I am twenty-one years or more of age…"); 27 C.F.R. §§ 478.99(b), 478.96(b), & 478.124(a), (f).

By their plain language, these statutory provisions and accompanying

3

regulations prohibit the sale or transfer of a firearm other than a shotgun or rifle and handgun ammunition by the FFLs NSSF represents to anyone under the age of twenty-one (the "Handgun Purchase Ban"). Because generally only FFLs can sell or transfer a handgun or handgun ammunition in commerce, *see VanDerStok*, 86 F.4th at 183, the Handgun Purchase Ban operates to preclude anyone aged 18 to 20, like the individual plaintiffs in this action, from acquiring a handgun or handgun ammunition in the commercial market.

## SUMMARY OF ARGUMENT

First, the Supreme Court has clearly recognized that the Second Amendment preserves the right of the people to keep and bear arms, specifically including handguns. In connection with that right, multiple courts have recognized that the Second Amendment's protections must extend to the lawful purchase of covered products if the right to "keep and bear" firearms is to be realized. These conclusions are consistent with the Supreme Court's long-standing recognition that constitutional protections extend to rights or acts necessary to the full enjoyment of a right expressly set forth in the Constitution.

Second, 18-to-20-year-olds are clearly encompassed by "the people" to whom the Second Amendment extends the right to keep and bear arms. The Supreme Court's decisions regarding the Second Amendment have broadly described the Amendment's reach to all members of the political community. And

the fact that law-abiding 18-to-20-year-olds were not only permitted to bear arms but were in fact required to do so as part of the Second Militia Act forcefully demonstrates that the people in the Founding Era would have understood that those young adults enjoyed the protections of the Second Amendment.

Third, because restrictions on the sale of handguns and handgun ammunition to law-abiding adults aged 18 to 20 are encompassed by the Second Amendment, those restrictions fail in the absence of a demonstration by Defendants of analogous regulations at the time of the ratification of the Second Amendment. No such Founding Era restrictions on 18-to-20-year-olds existed. Moreover, it is indisputable that in 1791, young adults – who were required to serve in the militia and provide their own firearms – had a recognized right to acquire the needed firearms. Defendants failed to meet their burden to show a national history or tradition at the time of the founding limiting or restricting which type of firearms or ammunition a young adult (18-to-20-year-olds) could purchase or acquire. The Handgun Purchase Ban is not permitted by the Second Amendment.

Against this backdrop, NSSF believes that Plaintiffs-Appellees have demonstrated that the judgment and injunction entered by the district court must be affirmed.

## ARGUMENT

The Handgun Purchase Ban, which prohibits law-abiding, responsible young

adults (18-to-20-year-olds) from purchasing any handgun or handgun ammunition from an FFL, unreasonably infringes upon the Second Amendment rights of those individuals.  In evaluating the constitutionality of laws implicated by the Second Amendment, the Supreme Court has established a two-part analytical approach. First, a court must evaluate whether the Second Amendment's plain text covers the conduct at issue.  *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022).  Second, where the Second Amendment is applicable, the question becomes whether the government can justify the restriction by showing that it is consistent with the nation's historical tradition of firearm regulation.  *Id*.  The Handgun Purchase Ban cannot withstand this scrutiny.

## I.    THE SECOND AMENDMENT RIGHT OF LAW-ABIDING CITIZENS TO KEEP AND BEAR ARMS FOR SELF-DEFENSE INCLUDES THE RIGHT TO ACQUIRE THOSE ARMS AND AMMUNITION.

The Second Amendment to the United States Constitution preserves "the right of the people to keep and bear Arms" and declares that this right "shall not be infringed."  U.S. Const. amend. II.  In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court recognized that handguns constitute an "entire class of 'arms'" covered by the Second Amendment and determined that a ban on the possession of handguns runs afoul of this constitutional provision.  554 U.S. at 628.  And in extending the Second Amendment's protection to the states under the Fourteenth Amendment, the Court found it "clear that the Framers and ratifiers of

the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty." *McDonald v. City of Chicago*, 561 U.S. 742, 778 (2010).

"Both *Heller* and *McDonald* suggest that broadly prohibitory laws restricting the core Second Amendment right—like the handgun bans at issue in those cases, which prohibited handgun possession even in the home—are categorically unconstitutional." *Ezell v. City of Chicago*, 651 F.3d 684, 703 (7th Cir. 2011). Of importance to NSSF's members, particularly licensed retailers, across the country whose business is the lawful commerce in firearms and ammunition – is the basic principle that the constitutionally protected right to possess a firearm is meaningless absent the right to purchase or otherwise acquire the firearm and its ammunition. The Seventh Circuit recognized a similar link with respect to range training, holding that "[t]he right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use; the core right wouldn't mean much without the training and practice that make it effective." *Id*. at 704.

Indeed, courts have regularly recognized the critical role of the licensed firearm dealers represented by NSSF in the realization of the rights protected by the Second Amendment. For example, the Ninth Circuit found that the right to possess firearms for protection includes the right "to obtain the bullets necessary to

7

use them." *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014). And the Ninth Circuit subsequently recognized a right to acquire firearms as a necessary corollary to the realization of the rights guaranteed by the Second Amendment in *Teixeira v. County of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017), although it found that the plaintiff there "failed to state a claim that the ordinance impedes Alameda County residents from acquiring firearms." *Id*. at 678.

The district court below correctly determined that "[c]ommon sense also tells us that the right to keep and bear arms includes the right to purchase them." Memorandum Op., JA51. Indeed, a panel of this Court recognized that "[t]he answer is not complicated. If you do not *already* own a handgun, then the only way to 'keep' or 'bear' one is to get one, either through sale, rental, or gift." *Maryland Shall Issue, Inc. v. Moore*, 86 F.4th 1038, 1043 (4th Cir. 2023) (emphasis in original), *reh'g en banc granted*, No. 21-2017 (L), 2024 WL 124290 (4th Cir. Jan. 11, 2024). And because the Handgun Purchase Ban precludes law-abiding young adults from obtaining handguns or handgun ammunition by purchase from FFLs, there can be no question but that those statutes and regulations "infringe" on the rights protected by the Second Amendment. *Fraser v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, ___ F. Supp. 3d ___, No. 3:22-CV-410, 2023 WL 3355339, at *7 (E.D. Va. May 10, 2023), *app. filed from subsequent judgment*, No. 23-2085 (4th Cir. Oct. 17, 2023) ("by virtue of the word 'infringed,' the

Second Amendment's protective textual embrace includes the conduct necessary to exercise the right ('to keep and bear')" and that "includes the right, *inter alia*, to purchase arms"); *see also Rocky Mountain Gun Owners v. Polis*, No. 23-CV-01077-PAB, 2023 WL 5017253, at *13 (D. Colo. Aug. 7, 2023) ("The Court agrees with the Individual Plaintiffs that the Second Amendment includes the right to acquire firearms and, therefore, protects the Individual Plaintiffs' proposed conduct."), *app. filed*, No. 23-1251 (10th Cir. Aug. 14, 2023).

This conclusion is also consistent with the Supreme Court's recognition in other contexts that constitutional rights include corollary conduct. For example, the "right of freedom of speech and press includes not only the right to utter or to print, but the right to distribute, the right to receive, the right to read…. Without those peripheral rights the specific rights would be less secure." *Griswold v. Connecticut*, 381 U.S. 479, 482–483 (1965); *see also Luis v. United States*, 578 U.S. 5, 26 (2016) ("Constitutional rights thus implicitly protect those closely related acts necessary to their exercise.") (Thomas, J., concurring).

Here, of course, the Handgun Purchase Ban operates as an impermissible intrusion on the right to acquire handguns and handgun ammunition by law-abiding young adults, and consequently, on the right protected by the Second

Amendment to keep and bear arms.[2]  *See also Ill. Ass'n of Firearms Retailers v. City of Chicago*, 961 F. Supp. 2d 928, 938 (N.D. Ill. 2014) (ban on sales of firearms within Chicago interfered with what the court characterized as "the *most fundamental* prerequisite of legal gun ownership—that of simple acquisition.") (emphasis in original).  Thus, the Government's argument that the Handgun Purchase Ban leaves those under 21 free to possess and use handguns acquired from someone aged 21 or over is unavailing.  The prohibition on acquiring handguns and handgun ammunition itself intrudes improperly on young adults' constitutional rights.

Indeed, no one would conclude that a law prohibiting young adults aged 18 to 20 from purchasing books from a retail bookseller is permissible as long as those young adults can obtain used books at a book swap.  And just as such young adults' exercise of free speech cannot depend on obtaining permission from adults over the age of 21, their exercise of their rights under the Second Amendment cannot be left to the discretion of others to provide them with the handguns and handgun ammunition they are otherwise permitted to possess.

Although the Government attempts to argue that the prohibition on sales of handguns and handgun ammunition to law-abiding young adults is only the

---

[2] Young adults who seek to acquire handguns from federally licensed dealers could only do so in compliance with the law, which includes background checks before a firearm can be purchased, unless a valid exception applies, *e.g.*, a state permit to purchase firearms.  *See* 18 U.S.C. § 922(t); 27 C.F.R. § 478.124.

regulation of firearms commerce and not a prohibition that runs afoul of the Second Amendment (Appellants' Br., 9-10), that argument is inherently inconsistent with the Supreme Court's established constitutional analysis. While the Supreme Court in *Heller* referenced "presumptively lawful" conditions imposed on the commercial sale of firearms, *Heller*, 554 U.S. at 626-27 & n.26, it was not addressing any such conditions. And when the Court in *Bruen* subsequently articulated the test for determining constitutionality of firearm laws under the Second Amendment, its authoritative statement of the required analytical approach did not create any exception or analytical step that exempted "presumptively lawful" restrictions on firearms commerce.

Other courts have recognized that reading the Supreme Court's language as allowing a prohibition on access to firearms protected by the Second Amendment goes too far. The court in *Renna v. Bonta* determined that California's Unsafe Handgun Act, which limits handgun sales to those on a state-approved roster of "safe" handguns, violated the Second Amendment because it restricted access to handguns commonly in use. *Renna v. Bonta*, 667 F. Supp. 3d 1048, 1065-66 (S.D. Cal.), *app. filed*, No. 23-55327 (9th Cir. Apr. 20, 2023). The court rejected defendants' argument that, because some handguns were available for purchase, the California law was a permissible condition on the commercial sale of firearms, finding instead that the law operated as a "functional prohibition" on "the

11

commercial sale of a large subset of handguns in common use." *Id.*; *see also United States v. Marzzarella*, 614 F.3d 85, 92 n.8 (3d Cir. 2010) (recognizing that "[i]f there were somehow a categorical exception for [commercial sales] restrictions, it would follow that there would be no constitutional defect in prohibiting the commercial sale of firearms. Such a result would be untenable under *Heller*.").

In reaching its outcome, the court in *Renna* relied on the analysis of this Court in *Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 5 F.4th 407 (4th Cir.), *vacated as moot on other grounds*, 14 F.4th 322 (4th Cir. 2021). While the *Hirschfeld* panel decision was vacated, other courts, like *Renna*, have acknowledged that it was vacated and yet nonetheless continued to find its reasoning persuasive. *See Lara v. Commissioner Pennsylvania State Police*, 91 F.4th 122, 132 n.12 (3d Cir. 2024) (while noting that the opinion had been vacated because the plaintiffs had turned 21, the court recognized that its analysis was "nevertheless instructive"); *Fraser*, ___ F. Supp. 3d ___, 2023 WL 3355339, at *10 ("The analysis of the issue [of whether 18-to-20-year-olds fall within the Second Amendment] in *Hirschfeld* is especially instructive.").

Like the *Hirschfeld* panel, the court in *Renna* recognized the distinction between laws that served as "a hoop someone must jump through to *sell* a gun, such as obtaining a license, establishing a lawful premise, or maintaining transfer

records," and laws "operat[ing] as a total ban on *buying* a gun from a licensed dealer that has met the required [licensing] conditions and qualifications to sell arms." *Renna*, 667 F. Supp. 3d at 1064 (emphasis in original) (quoting *Hirschfeld*, 5 F.4th at 416). The court reasoned that "[i]f the commercial sales limitation identified in *Heller* were interpreted as broadly as the State suggests, the exception would swallow the Second Amendment." *Renna*, 667 F. Supp. 3d at 1065.

In this case, the right to acquire handguns and handgun ammunition is a necessary and protected corollary to the Second Amendment's right to keep and bear arms, and the Handgun Purchase Ban's wholesale prohibition on young adults' exercise of that right cannot be justified.

## II.    YOUNG ADULTS AGED 18 TO 20 ARE WITHIN THE PROTECTION OF THE SECOND AMENDMENT.

It should also be clear that 18-to-20-year-olds are part of "the people" encompassed within the Second Amendment's scope, and the Government does not really argue otherwise, nor could it. Memorandum Op., JA60. Indeed, the Third Circuit in *Lara* recently recognized:

> Although the government is tasked with identifying a historical analogue at the second step of the *Bruen* analysis, we are not limited to looking through that same retrospective lens at the first step. If, at step one, we were rigidly limited by eighteenth century conceptual boundaries, "the people" would consist of white, landed men, and that is obviously not the state of the law.

*Id*. at 131. In addition, the court concluded that "wholesale exclusion of 18-to-20-

year-olds from the scope of the Second Amendment would impermissibly render 'the constitutional right to bear arms in public for self-defense ... a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *Id*. at 132 (quoting *Bruen*, 142 S. Ct. at 2156 (cleaned up)).  As a result, the Third Circuit held "that 18-to-20-year-olds are, like other subsets of the American public, presumptively among 'the people' to whom Second Amendment rights extend." *Lara*, 91 F.4th at 132.

It should be beyond debate that at the time the Bill of Rights was ratified, their protections extended to citizens 18 to 20 years old.  In fact, the federal Militia Act enacted in 1792 stated that each male citizen "*who is or shall be of the age of eighteen years … shall severally and respectively be enrolled in the militia*" and shall "provide himself" with a firearm and ammunition.  Second Militia Act of 1792, ch. 33, §1, 1 Stat. 271, 271 (1792) (emphasis added).  And as the Supreme Court has noted, those in the militia were plainly within "the people" that were afforded Second Amendment protection.  *Heller*, 554 U.S. at 580.  Those 18-year-olds who were required to perform militia service and supply their own weapons had to acquire those firearms.  That was the understanding of the Second Amendment in the Founding Era.

More generally, the Court in *Heller* plainly read the Second Amendment's reference to "the right of the people" within the broader context of the other

references to "the people" in the Constitution, finding that "the term unambiguously refers to all members of the political community, not an unspecified subset." *Heller*, 554 U.S. at 580. Its use of the phrase in the context of similar references in the Constitution created a "strong presumption that the Second Amendment right is exercised individually and belongs to all Americans." *Id.* at 580-81. Based in part on *Heller*'s discussion of the reach of the Second Amendment rights, as well as the absence of age restrictions in other provisions in the Bill of Rights compared to other provisions in the Constitution,[3] references to "the people" elsewhere in the Bill of Rights, and Founding Era militia laws, the court in *Worth v. Harrington* concluded that "the text of the Second Amendment includes within the right to keep and bear arms 18-to-20-year-olds …." 666 F. Supp. 3d 902, 916 (D. Minn.), *app. filed*, No. 23-2248 (8th Cir. 2023); *see also Firearms Policy Coalition, Inc. v. McCraw*, 623 F. Supp. 3d 740, 748 (N.D. Tex.) ("[A]re law-abiding 18-to-20-year-olds properly considered members of the political community and a part of the national community? The answer is yes. And based on that answer, the Court concludes that law-abiding 18-to-20-year-olds are a part of 'the people' referenced in the Second Amendment."), *app. dism'd*, No. 22-10898, 2022 WL 19730492 (5th Cir. Dec. 21, 2022); *Fraser*, ___ F. Supp. 3d

---

[3] Indeed, the Constitution includes age restrictions not found in the Bill of Rights. *See* U.S. Const. art. I, § 2 (age 25 for the House); U.S. Const. art. I, § 3 (age 30 for the Senate); U.S. Const. art. II, § 1 (age 35 for the President); *cf.* U.S. Const. amend. XXVI (setting voting age at 18).

___, 2023 WL 3355339, at *14 ("Like these other rights [in the First, Fourth, Fifth, Eight, and Fourteenth Amendments], the Second Amendment's protections apply to 18-to-20-year-olds.").

As this Court recognized in *Hirschfeld*:

> Looking through this historical lens to the text and structure of the Constitution reveals that 18- to 20-year-olds have Second Amendment rights. Virtually every other constitutional right applies whatever the age. And the Second Amendment is no different.

*Hirschfeld*, 5 F.4th at 421.  Thus, the district court in this case correctly concluded that 18-to-20-year-olds are entitled to the protections of the Second Amendment.

## III.  THE HANDGUN PURCHASE BAN'S PROHIBITION ON THE PURCHASE OF HANDGUNS AND HANDGUN AMMUNITION BY LAW-ABIDING YOUNG ADULTS CANNOT BE JUSTIFIED.

Because the right of 18-to-20-year-olds to purchase handguns and handgun ammunition comes within the reach of the Second Amendment, the Government was required to demonstrate that the Handgun Purchase Ban is justified by analogous historical regulations.  *Bruen*, 597 U.S. at 24.  The Government cannot do so.

First, the Supreme Court's decision in *Bruen* re-affirmed that "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them."  *Bruen*, 142 S. Ct. at 2136 (quoting *Heller*, 554 U.S. at 634–635).  For purposes of the Second Amendment, this means that the district court was

required to examine the understanding of the Second Amendment at the time of the

Founding, and that is the only relevant point for purposes of reviewing the federal

Handgun Purchase Ban.  *See id.*; *see also Moore v. Madigan*, 702 F.3d 933, 935

(7th Cir. 2012) (even in case challenging state law, "1791, the year the Second

Amendment was ratified" was "the critical year for determining the amendment's

historical meaning").[4]

 *Bruen* recognized that "post-Civil war discussion of the right to bear arms,

[which] 'took place 75 years after the ratification of the Second Amendment, …

do[es] not provide as much insight into its original meaning as earlier sources.'"

*Bruen*, 597 U.S. at 36 (quoting *Heller*, 554 U.S. at 614).  In reviewing the issue of

what period of analogous laws is relevant to restrictions on 18-to-20-year-olds, the

Third Circuit followed this approach.  It first recognized that the Supreme Court

has regularly construed other aspects of the Bill of Rights according to their

understanding at the time of the Founding, and not the adoption of the Fourteenth

---

 [4] While the Second Amendment became operative as to the federal government upon adoption, it was not made applicable to the States until the adoption of the Fourteenth Amendment.  Nonetheless, *Bruen* made clear that "individual rights enumerated in the Bill of Rights and made applicable against the States through the Fourteenth Amendment have the same scope as against the Federal Government." *Bruen*, 142 S. Ct. at 2137; *see also McDonald*, 561 U.S. at 765 (recognizing that enforcement under the Fourteenth Amendment must be "according to the same standards that protect those personal rights against federal encroachment" (quoting *Malloy v. Hogan*, 378 U.S. 1, 10 (1964)).  Thus, while not at issue in this case, even when reviewing State-imposed restrictions on firearms, the critical period for understanding the meaning of the Second Amendment is the Founding Era.

Amendment. *Lara*, 91 F.4th at 134. Indeed, *Bruen* referred to this history of constitutional construction as reflecting a general assumption. *Bruen*, 597 U.S. at 37 ("And we have generally assumed that the scope of the protection applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791."). After cataloguing the Supreme Court's history of interpreting guarantees in the Bill of Rights according to their public meaning at the founding, *Lara*, 91 F.4th at 133-34, the Third Circuit found that "to maintain consistency in our interpretation of constitutional provisions, we hold that the Second Amendment should be understood according to its public meaning in 1791." *Id*. at 134.[5]

Other courts which have looked at prohibitions on 18-to-20-year-olds' possession or purchase of firearms have concluded the same. *See*, *e.g.*, *Fraser*, ___ F. Supp. 3d ___, 2023 WL 3355339, at *15 ("The Court must most heavily credit the historical sources from around the time of the ratification of the Second Amendment (1791)."); *Worth*, 666 F. Supp. 3d at 919 ("[I]n this Court's view, *Bondi* declined to follow rather clear signs that the Supreme Court favors 1791 as the date for determining the historical snapshot of 'the people' whose

---

[5] In so finding, the Third Circuit recognized its disagreement with the panel decision in *National Rifle Association v. Bondi*, 61 F.4th 1317 (11th Cir. 2023). *See Lara*, 91 F.4th at 134 n.14. But as the Third Circuit also noted, rehearing en banc has been granted in *Bondi*, which vacated the panel decision. *See* 72 F.4th 1346 (11th Cir. 2023).

understanding of the Second Amendment matters."). As the court in *Worth* also recognized, "*Bondi*'s conclusion [that the understanding at the time the Fourteenth Amendment was adopted is controlling] is difficult to square with the Supreme Court's emphasis on applying the Bill of Rights against the states and federal government according to the same standards." *Id.* at 920 (citing *Bruen*, 142 S. Ct. at 2137).

Second, when properly analyzed under the view of the Second Amendment in the Founding Era, it is apparent that the Handgun Purchase Ban is irreconcilable with the Constitution. As recognized in *Hirschfeld* after a thorough analysis, "near the time of ratification there were no laws restricting the sale of firearms to 18-year-olds." 5 F.4th at 437; *see also id.* ("earliest laws cited were passed over 60 years after ratification, and most were enacted after the Civil War"). Other courts have also concluded that no Founding Era laws limited the sale of firearms to 18-to-20-year-olds. *See Polis*, 2023 WL 5017253, at *18 ("the Governor fails to point to any evidence during the founding era that a total prohibition on the sale of firearms to minors was consistent with the right to bear arms"). Indeed, in the Founding Era, not only was there an absence of laws prohibiting 18-to-20-year-olds from possessing or purchasing firearms, but the Militia Acts of the time *required* such young adults to be armed. *See* Second Militia Act of 1792, ch. 33, § 1, 1 Stat. 271 (1792) (requiring all able-bodied men to enroll in the militia and to

arm themselves upon turning 18).  As the Third Circuit recognized, "the Second Militia Act is good circumstantial evidence of the public understanding at the Second Amendment's ratification as to whether 18-to-20-year-olds could be armed, especially considering that the Commissioner cannot point us to a single founding-era statute imposing restrictions on the freedom of 18-to-20-year-olds to carry guns."  *Lara*, 91 F.4th at 137; *see also Fraser*, ___ F. Supp. 4th ___, 2023 WL 3355339, at *19 ("The Government has not presented any evidence of age-based restrictions on the purchase or sale of firearms from the colonial era, Founding, or Early Republic. [citations omitted] Nor has the Government offered evidence of such regulation between then and 1791 or in relevant proximity thereafter.").

As the court in *Fraser* concluded, "the lack of analogous evidence of Founding-era regulations … permits a finding that the Founders considered age-based regulations on the purchase of firearms to circumscribe the right to keep and bear arms confirmed by the Second Amendment."  *Fraser*, ___ F. Supp. 4th ___, 2023 WL 3355339, at *20.  The Third Circuit reached the same conclusion:

> We understand that a reasonable debate can be had over allowing young adults to be armed, but the issue before us is a narrow one. Our question is whether the [State] has borne his burden of proving that evidence of founding-era regulations supports Pennsylvania's restriction on 18-to-20-year-olds' Second Amendment rights, and the answer to that is no.

*Lara,* 91 F.4th at 137.

20

Likewise here, the district court correctly held that the Handgun Purchase Ban improperly infringes on the Second Amendment rights of 18-to-20-year-olds and is, therefore, unconstitutional. This conclusion was undoubtedly correct, and NSSF urges affirmance of the district court's judgment.

## Conclusion

For the foregoing reasons, *Amicus* NSSF joins Plaintiffs-Appellees in urging affirmance of the district court.

Dated: February 28, 2024    Respectfully submitted,

_[s] Michael L. Rice_____
Michael L. Rice
Harrison Law LLC
141 W. Jackson Blvd.
Suite 2055
Chicago, IL 60604
Telephone: (312) 638-8781
Fax: (312) 638-8793
mikerice@hlawllc.com

*Counsel for Amicus*
*National Shooting Sports Foundation, Inc.*

## Certificate of Compliance

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel certifies that this Brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because it contains 4935 words, exempting those portions excludes by Rule 32(f). The undersigned counsel also certifies that this Brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Office Word in 14-point Times New Roman font.

Dated: February 28, 2024                    Respectfully submitted,

                                            *[s] Michael L. Rice*
                                            Michael L. Rice
                                            *Counsel for Amicus*

## Certificate of Service

I hereby certify that on February 28, 2024, I filed the foregoing with the Clerk of the Court via CM/ECF, which will electronically serve all counsel of record. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated: February 28, 2024                    Respectfully submitted,

*[s] Michael L. Rice*
Michael L. Rice
*Counsel for Amicus*